# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-1557

LEJEUNE BROTHERS, INC.

VERSUS

GOODRICH PETROLEUM CO., L.L.C., ET AL

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, DOCKET NO. 101228, DIV. H
HONORABLE LORI A. LANDRY, DISTRICT JUDGE

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir and James T. Genovese, Judges.

Decuir, J., dissents and assigns reasons.

**AFFIRMED.**


**Donald T. Carmouche**
**Victor L. Marcello**
**John H. Carmouche**
**Kenneth Jay DeLouche**
**William R. Coene, III**
**Brian T. Carmouche**
**Talbot, Carmouche & Marcello**
**214 W. Cornerview**
**P.O. Box 759**
**Gonzales, LA  70707-0759**
**(225) 644-7777**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        **LeJeune Brothers, Inc.**

**M. Bofill Duhe**
**25 Paradise Woods**
**New Iberia, LA 70563**
**(337) 519-1049**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **LeJeune Brothers, Inc.**


**Patricia E. Weeks**
**John P. Gonzalez**
**Weeks & Gonzalez**
**400 Magazine Street, Suite 200**
**New Orleans, LA 70130**
**(504) 799-2888**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **LeJeune Brothers, Inc.**

**Robert C. Vines**
**300 Boas Ave.**
**New Iberia, LA 70563**
**(337) 365-1729**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **LeJeune Brothers, Inc.**


**Scott C. Sinclair**
**Sinclair Law Firm, L.L.C.**
**P.O. Box 1026**
**Shreveport, LA 71161-1026**
**(318) 424-4901**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Goodrich Petroleum Co., L.L.C.**


**Williams G. Davis**
**Milling, Benson, Woodward, L.L.P.**
**339 Florida Street, Suite 300**
**Baton Rouge, LA 70801**
**(225) 291-7300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Tom Brown, Inc.**

**D. Reardon Stanford**
**Hoyt & Stanford, L.L.C.**
**315 S. College Road, Suite 165**
**Lafayette, LA 70503**
**(337) 234-1012**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Margaret Viator Estis Saunier**

**COOKS, Judge.**

In this oil and gas contamination case, the Plaintiff appeals the trial court's judgment granting the Defendant's motion for partial summary judgment and exception of no right of action. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

The property at issue in this case, a tract of land located in Iberia Parish, was acquired by David Baez, Jr. through his father's estate in 1963 and through a transfer from his mother in 1965. In 1976, an oil well known as the "D. Baez No. 1 Well" was drilled and completed as a producer. The well was operated by Hawthorne Oil & Gas Corporation (a predecessor of defendant Goodrich Petroleum) under a mineral lease that had been granted by Baez in 1970.[1] The Baez Well was plugged and abandoned in 1987. However, the Baez lease continued by virtue of production from another well, the Boutte Well, which covered a portion of the property. Production in the Boutte well became sporadic in 1993, lapsed for 180 days in 1998, and ceased entirely in April 1999.

On September 19, 2000, LeJeune Brothers purchased the property at issue from Baez. One-half of the mineral rights in the sale were reserved by Baez, but this reservation was conditioned upon an agreement by Baez not to use the surface for mineral exploration or development. After the sale, LeJeune Brothers discovered that the property was contaminated with oilfield exploration and production waste. LeJeune Brothers maintained it had no knowledge of the contamination when it purchased the property.

On August 22, 2003, LeJeune Brothers filed suit against Goodrich Petroleum and several other defendants, alleging its property had been damaged and

---

[1] Hawthorne Oil & Gas operated the Baez Well from 1976 to 1979. Five Star Oil Co. operated the lease from 1979 to 1981, followed by Ed I. Estis from 1981 to abandonment.

contaminated as a result of oil and gas activities. LeJeune Brothers dismissed its claims against all of the original defendants, except for Goodrich Petroleum. Goodrich Petroleum answered the suit and also filed third party demands against Tom Brown, Inc., Margaret Ellis Saunier, Sandra Ann Estis Turner, Wendy Marie Estis Touchet, Jamie Marie Estis Benoit and Edward Ivey Estis, Jr., alleging under various theories that they were liable for either contribution or indemnity for any possible judgment that Goodrich Petroleum may owe to LeJeune Brothers. Tom Brown, Inc. then filed its own cross-claim against the Estis family third-party defendants seeking indemnity for any amounts which Tom Brown, Inc. may be cast in judgment. LeJeune Brothers did not file any claims against either Tom Brown, Inc. or the Estis family.

Goodrich moved for partial summary judgment, claiming that LeJeune Brothers did not have contract and punitive damage claims against it.[2] On June 30, 2006, the trial court granted Goodrich's motion, finding LeJeune Brothers did not have contract claims against Goodrich as it was not a successor or assignee of any rights under the mineral lease granted by Baez in 1970. The trial court rendered the following written reasons for judgment:

> Since 1996, with the Amendment of Louisiana Code of Civil Procedure Article 996, summary judgments are favored by Louisiana Courts. Although the burden begins with the mover on the Motion for Summary Judgment, once the mover has made a prima facie showing that its motion should be granted, the burden then shifts to the non-moving party to present evidence that a material factual issue remains.

> In the case at bar, Lejeune Brothers L.L.C. (Lejeune Brothers) concedes that there is no genuine issue of material fact relative to their punitive damages claim and the claim for mental anguish. The only issue remaining is whether Lejeune Brothers' contract claim is supported by the facts of this case and Louisiana law. As the facts of

---

[2] Concerned that LeJeune Brothers might go back to Baez and obtain a specific assignment of the claims and refile its complaint, Goodrich approached Baez and entered into a settlement and compromise of all the claims pending in this litigation.

-2-

this case do not support a finding that Plaintiff has acquired the right to sue as a party to a contract or assignee, the specific issue is whether Plaintiff acquired the right to sue, pursuant to the Baez Lease, by virtue of a stipulation *pour autrui.*

After review of the pertinent language of the Baez Lease and jurisprudence, this Court finds the language of the Baez Lease does not create a stipulation *pour autrui* in favor of Lejeune Brothers. See *Broussard vs. Northcott Exploration Company, Inc.*, 481 So. 2d 125, 127 (La. 1986). The language of this contract is distinguishable from the language and subsequent pronouncements of *Andrepont vs. Acadia Drilling Company*, 231 So. 2d 347, 351 (La. 1969); and *Hawthorne Farm, Inc. vs. Liberty Oil and Gas Corp., et al*, 790 So. 2d 93 (La. App. 3 Cir. 6/20/01).

Lejeune Brothers further argued that they acquired the right to sue in contract because of the implied obligation to restore the property to its original pre-lease condition that is inherent in all mineral leases, citing *Terrebonne Parish School Board vs. Castex Energy, Inc.*, 893 So. 2d 789, 791-792, 2004-0968 (La. 1/19/05), *Mineral Code Article 122, LSA-R.S. 31:122.* While the *Terrebonne* Court addressed the obligations owed the lessor and/or assignee inherent in all mineral leases, applying the jurisprudence and Civil Code articles discussed, the Court held "in absence of an express lease provision, Mineral Code Article 122 does not impose a duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised his rights under the lease unreasonably and excessively." *Id at 801.* Additionally, no evidence was offered that suggest the facts before us fall under the line of cases that require restoration as a matter of expressed obligations found in the lease and outside the purview of the mineral code. Thus, movants are entitled to summary judgment as a matter of law as no genuine issue of material fact exist on the limited question before the Court.

Goodrich then filed an exception of no right of action on July 7, 2006, asserting that LeJeune Brothers had no right of action to maintain their non-contractual claims. Specifically, Goodrich argued "the claim for damages that is being pursued by LeJeune Brothers is actually a claim that belonged to Baez and has not been transferred or conveyed to LeJeune Brothers." On that same date, LeJeune Brothers filed a motion for reconsideration of the trial court's ruling granting partial summary judgment. The matter was set for hearing on July 25, 2006, after which the trial court granted the no right of action dismissing "all tort claims alleged by LeJeune Brothers,

L.L.C., against Goodrich Petroleum, L.L.C., for damage to the subject property." On that date, the trial court also denied LeJeune Brothers' motion for reconsideration of its earlier ruling granting the partial motion for summary judgment. On August 9, 2006, the trial court signed a comprehensive judgment prepared by Goodrich dismissing all claims of LeJeune Brothers and dismissing all of the pending third party demands.

LeJeune Brothers filed a motion for new trial, which was denied by the trial court. This appeal followed, wherein LeJeune Brothers appealed from the following rulings and actions of the trial court:

(1) The judgment granting Goodrich's motion for partial summary judgment.

(2) The judgment granting Goodrich's exception of no right of action, dismissing all of LeJeune Brothers' tort claims for damage to the subject property.

(3) The judgment of August 9, 2006, dismissing all claims of LeJeune Brothers.

As to the three judgments appealed from, LeJeune Brothers asserted the following assignments of error:

(1) The trial court committed error in granting partial summary judgment on the contract claims of plaintiff.

(2) The trial court committed error in finding that plaintiff was not a successor or assign of Baez who is entitled to bring this restoration action to enforce the express and implied obligations on the mineral lease.

(3) The trial court committed error in failing to find that plaintiff was a third party beneficiary of the mineral lease.

(4) The trial court committed error in granting Goodrich's exception of no right of action on the tort claims of plaintiff.

(5) The trial court committed error in dismissing all claims of the plaintiff in its judgment of August 9, 2006.

(6) The trial court committed error in failing to find that plaintiff has a

right and cause of action for restoration damages under the Mineral Code, articles 11 and 122.

(7) The trial court committed error in dismissing plaintiff's claims under La.Civ.Code art. 667 and claims for unjust enrichment.

## ANALYSIS

### I.   Contract Rights Under the Baez Lease.

LeJeune Brothers contends partial summary judgment should not have been granted on its contract claims, because it succeeded to the rights in the Baez Lease because it was a party or assignee of that lease. Goodrich argued to the court below that LeJeune Brothers "is not a party to the Baez Lease, is not an assignee to the Baez Lease, and is not a third party beneficiary under the Baez lease." Thus, Goodrich argues LeJeune Brothers has no contract claims based on that lease. The trial court agreed with Goodrich.

The facts are undisputed that LeJeune Brothers acquired the property directly from David Baez, Jr. The Baez lease provided that "[a]ll provisions hereof shall extend to and bind the successors and assigns (in whole or in part) of Lessor or Lessee." LeJeune Brothers contends this language allows it to claim damages under the Baez Lease.

We note there is no doubt that LeJeune Brothers acquired the *property* from Baez. What is at issue is whether LeJeune Brothers acquired any rights under the *lease* from Baez. LeJeune Brothers can have no contract action under the Baez Lease, unless it acquired rights under the lease.

In *Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp.*, 02-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, *writs denied*, 03-1585 (La. 10/31/03), 857 So.2d 476 and 03-1624 (La. 10/31/03), 857 So.2d 476, suit was brought by the owner of property contaminated by years of oil and gas operations through a lease that was established

-5-

in 1926 and was still active at the time of the lawsuit. The plaintiff claimed damages in contract and tort to both the surface and the underground aquifer. All of the defendants, at various times since 1926, operated oil and gas wells pursuant to the 1926 lease. The plaintiff acknowledged it was only the owner of the surface of the property and did not own the minerals beneath the surface, as plaintiff's ancestor in title reserved all of the mineral rights. This court held that a plaintiff, who had purchased the property from an ancestor in title to the lessor, could not maintain an action for restoration damages as a party to the mineral lease. We specifically held that plaintiff could not have acquired any rights as assignee under the lease because the plaintiff's vendor did not own any rights and, thus, could not convey any rights.

Goodrich contends the same result from *Hazelwood Farm* is appropriate in this case. LeJeune Brothers argues the facts in *Hazelwood Farm* are critically different from the present case, because in *Hazelwood Farm* the plaintiff's ancestor in title had reserved all of the mineral rights, and thus all rights to exercise the rights of a mineral lessor. By contrast, the sale to LeJeune Brothers in this case reserved only half of the mineral rights to the seller Baez, and transferred the other half to LeJeune Brothers. Had there been no mineral reservation in *Hazelwood*, LeJeune Brothers argues, the plaintiff therein could have sued as a party to the lease.

Goodrich argues this distinction is irrelevant, because Baez could not have transferred any rights in the Baez Lease to LeJeune Brothers because that lease had terminated over two years prior to LeJeune Brothers acquisition of the property.[3] Thus, it was impossible to transfer rights to an assignee under an expired mineral lease. We agree.

---

[3] The D. Baez No. 1 Well was plugged and abandoned in 1987, but the Baez Lease continued due to production from the Boutte Well, which covered a portion of the subject property. It is arguable the Baez Lease terminated in its entirety in 1993, when production from the Boutte Well became very sporadic. However, in 1998, there was a period of more than ninety consecutive days with no production at all from the Boutte Well, which effectively terminated the Baez Lease.

Although LeJeune Brothers argues it acquired the property from the mineral lessor, since the lease had expired at least two years before Baez sold the property to LeJeune Brothers, Baez was not a mineral lessor. Therefore, he could not assign any rights under the expired Baez lease in that sale. Further, we note LeJeune Brothers at the summary judgment hearing acknowledged it was not an assignee or party under the lease:

> I do agree with him [counsel for Goodrich] that we are not claiming that LeJeune Brothers were assigned this lease. I agree with him that we were not, we're not alleging that the LeJeune Brothers were party to this lease.

Therefore, we find no error on the trial court's part in finding LeJeune Brothers was not a party or assignee to the Baez Lease.

LeJeune Brothers also argues it can still bring claims under the Baez Lease because it is a third party beneficiary. The trial court found the language of the Baez Lease does not create a stipulation *pour autrui* in favor of Lejeune Brothers, relying on the Louisiana Supreme Court case of *Broussard v. Northcott Exploration Co., Inc.*, 481 So.2d 125 (La. 1986). In *Broussard*, the court examined whether a mineral lease created a stipulation *pour autrui* in favor of a farming tenant. The Court stated as follows:

> Mr. Broussard argues that the Damage Clause of the mineral lease contains a stipulation *pour autrui* enabling him to recover. The clause states that:
>
> "The Lessee shall be responsible for all surface damages *of the Lessor* (emphasis added) caused by the Lessee's operations."
>
> A stipulation *pour autrui* exists when some advantage to a third person is created as a condition or consideration of a communtative [sic] contract. LSA-C.C. art. 1890 (West 1973) [Current version at LSA-CC 1978 (West 1985) ]. In order to determine if a stipulation exists, we must look to the intention of the parties at the time the mineral lease was negotiated. This can best be accomplished by comparing the standard damage clause found in the original version of the mineral lease to the modified version agreed to by the parties. The unmodified version of

the Damage Clause read as follows:

"The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations."

In negotiating the mineral lease the parties modified the phrase "for all damages to timber and growing crops" to read "for all surface damages." However, they did not modify the mineral lease to expand Northcott's liability beyond the "damages of the lessor." For this reason, we can easily distinguish *Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231 So.2d 347 (1969), and *Hargroder v. Columbia Gulf Transmission Co.*, 290 So.2d 874 (La.1974).

In *Andrepont*, supra, the standard clause set forth above was modified by deleting the phrase "to timber and growing crops of Lessor." The resulting clause read: "The Lessee shall be responsible for *all damages* (emphasis added) caused by Lessee's operations." It did not restrict liability to the damages suffered by "the Lessor." The crop loss suffered by the farmer in *Andrepont*, supra, was clearly included within the "all damages" language allowing him to recover under the mineral lease. In *Hargroder*, supra, it was specified in the agreement that the defendant would pay for damages "which may arise to growing crops." In both cases the intent to pay for crop damage was beyond question.

For the reasons set forth above, the Court of Appeal was correct when it concluded that the mineral lease did not create a stipulation *pour autrui* in favor of Minos Broussard.

*Broussard*, 481 So.2d at 127.

As in *Broussard*, the damage clause in the Baez Lease was similarly modified. The original damage clause in the Baez Lease read, "The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations." However, in the final version the words "timber and growing crops of" were struck out, and the clause read "The Lessee shall be responsible for all damages *to Lessor* caused by Lessee's operations." Thus, just as in *Broussard*, the damages permitted by the Baez Lease were limited to the damages suffered by the Lessor, Mr. Baez. The trial court did not err in finding LeJeune Brothers was not a third party beneficiary of the Baez Lease.

*Hazelwood Farm*, as was *Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231

So.2d 347 (1969), is distinguishable from the present case. We found a stipulation *pour autrui* to exist there because the clause made the lessee responsible for **all damages**, not just the damages caused to the lessor. The Baez Lease clearly only provides rights under the lease to the lessor. Since LeJeune Brothers did not occupy that status, it cannot be a third party beneficiary.

## II. Exception of No Right of Action to Bring Tort Claims.

The trial court granted Goodrich's exception of no right of action, dismissing all tort claims alleged by LeJeune Brothers against Goodrich for damage to the subject property. The record established that Goodrich's activities (through its predecessor in title Hawthorne Oil & Gas) ceased in July, 1979. Under Louisiana law, generally a claim for damages to property belongs to the person who owns the property at the time it was damaged. Goodrich contends this is a personal right, not a real right, and does not automatically transfer to the succeeding owner of the property. It is established that this right can be transferred to the succeeding property owner, but a specific assignment of this right is required to accomplish such a transfer.

In *St. Martin v. Mobil Exploration & Producing U.S. Inc.*, 224 F.3d 402, 404 (5th Cir.2000), the United States Fifth Circuit Court of Appeal discussed whether a purchaser can recover from a third party for damages to the property that occurred prior to the sale:

> [T]he general Louisiana rule is that a purchaser cannot recover from a third party for property damage inflicted prior to the sale. *St. Jude Medical Office Bldg. Ltd. Part. v. City Glass and Mirror, Inc.*, 619 So.2d 529, 530 (La.1993). Instead, courts have held that it is the landowner at the time of the alleged damages who has the real and actual interest to assert a claim. *Dorvin Land Corp. v. Parish of Jefferson*, 469 So.2d 1011, 1013 (La.App. 5 Cir.1985). The right to assert a claim for damages to land is a personal right, not a real right and, consequently, it is not transferred by a mere transfer of title to the land; "[r]ather, for the subsequent owner of the land to be in a position

to assert the claim, there must be a specific assignment of the right to him." *Id., citing Prados v. South Central Bell Telephone Co.*, 329 So.2d 744 (La.1975). The reasoning behind these principles is that the buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to a sales price. *Prados*, 329 So.2d at 751.

A review of the cash sale from Baez to LeJeune Brothers establishes there was no specific assignment of any claims for damages to the subject property. Further, the cash sale between Baez and LeJeune Brothers specifically acknowledged that the purchase price of the property was negotiated with reference to the condition of the property:

> The parties acknowledge that before executing this transfer the Purchaser had ample opportunity to examine and inspect the premises herein transferred, and the consideration of this transfer was determined and agreed upon only after Purchaser has fully and completely inspected same to determine fitness, soundness and environmental quality.

Despite the general rule of law that the right to assert a claim for damages to land is personal, and is not transferred by a mere transfer of title to the land, LeJeune Brothers argues the right to sue for damages to the land is a real, rather than personal, right that "runs" with the property. In support of its argument, LeJeune Brothers cites the Louisiana Supreme Court's decision in *Hopewell, Inc. v. Mobil Oil Co.*, 00-3280 (La. 2/9/01), 784 So.2d 653. The plaintiff in *Hopewell* purchased property which the vendor's ancestors had previously leased to a company for oil and gas operations. The plaintiff cleared the property of structures built by that prior lessee and sued its successor, Mobil Oil, for pollution caused by the oil and gas operations. The claim was premised upon a statutory requirement that an owner of a mineral servitude is "obligated, insofar as practicable, to restore the surface to its original condition" pursuant to La.R.S. 31:22 and the conveyance of a sale which conveyed all of the vendor's rights. The Second Circuit Court of Appeal held the claim against the prior lessee was a *personal right* of the owner of the property when the lessee failed to

restore it, and there was no assignment of that personal right to plaintiff through the conveyance. See *Hopewell, Inc. v. Mobil Oil Co.*, 33,774 (La.App. 2 Cir. 11/1/00), 770 So.2d 874. In holding the right personal, the court of appeal relied on *Prados v. South Central Bell Telephone Co.*, 329 So.2d 744 (La.1975) (on rehearing). In *Prados*, a non-mineral lease required the lessee to remove any improvements it made on the property. When the lease ended, however, the owner did not require the lessee to do so. The owner sold the property; then the purchaser sued the lessee. The Louisiana Supreme Court held the claim against the lessee involved a personal, rather than real, right.

In a nine-line opinion, however, the Louisiana Supreme Court reversed the second circuit's decision in *Hopewell* and remanded the action for further proceedings. The court's entire opinion stated:

> Granted. Judgment of the Court of Appeal is reversed. Judgment of the trial court denying defendant's exception of no right of action is reinstated. *Prados v. South Central Bell Telephone Company*, 329 So.2d 744 (La.1975) (on rehearing), which the Court of Appeal relied upon, involves rights arising under a lease and is distinguishable from the instant facts. Case remanded to the trial court for further proceedings.

*Hopewell*, 784 So.2d 653.

Plaintiffs contend the Louisiana Supreme Court's brief *Hopewell* decision overturned consistently held jurisprudence that the right to assert a claim for damages to land is a personal right, not a real right, and can only be transferred through a specific assignment of that right. We disagree.

There have been no state decisions which have specifically addressed the effect of the *Hopewell* decision on this issue. However, this court in *Hazelwood Farm*, 844 So.2d 380, decided after the *Hopewell* decision, cited the longstanding rule of *Prados* with approval in the context of a claim for contamination of property due to oil and

gas operations. We stated:

> The *Prados* decision held that the right to damages conferred by a lease was a personal right, not a property right, and as a personal right/obligation, it did not pass to the new owners of the land because there was no specific conveyance of it in the instrument of sale.

*Id.* at 386-87.

Two federal cases have expounded on the affect of the *Hopewell* decision upon Louisiana's longstanding rule that the right to damages conferred by a lease is a personal right that must be specifically assigned at the time of sale. In *May v. Texaco, Inc.*, 73 Fed.App. 78 (5th Cir. 2003), the plaintiff attempted to give the same interpretation of *Hopewell* in this area as LeJeune Brothers. The U.S. Fifth Circuit Court of Appeal stated:

> Plaintiffs contend the Louisiana Supreme Court's extremely brief *Hopewell* decision held the right to sue for damages to the land is a real (as opposed to personal) right that "runs with the land." Needless to say, such a rule of Louisiana property law is not ascertainable from that opinion.

Similarly, the U.S. District Court for the Western District of Louisiana in *Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc.*, 380 F.Supp.2d 755, 771 (W.D. La. 2004), discussed the effect of *Hopewell* as follows:

> The only thing clear about the decision is that the court did not, by its brief reversal, establish a new legal principle. If that had been the court's intent, it easily could have said so in plain terms – i.e., that it was conferring standing upon subsequent landowners to assert tort claims for property damage occurring prior to their acquisition of the land. Nor did the decision alter the rule in Louisiana that the landowner at the time of the alleged damages is the person with the real and actual interest to assert a tort claim involving the property under *Gumbel* and *Dorvin*.

LeJeune Brothers argues a "fair reading of the Supreme Courts' summary writ decision in *Hopewell* requires the conclusion that claims for breach of a mineral lease and tort claims can be asserted by a successor or assign of the original mineral lessor." LeJeune Brothers argues *Prados* is different from the present case in that it

-12-

involved a claim for property damages arising from the breach of a predial lease, whereas *Hopewell* and this case involve a breach of a mineral lease. LeJeune Brothers notes a mineral lease is classified in the Mineral Code as a real right, and that a predial lease is classified as a personal right. Thus, LeJeune Brothers argues that since a mineral lease is classified as a real right under the Mineral Code, then by law it acquired its benefits when it purchased the property. We disagree. The Supreme Court in *Prados* specifically stated that "[u]nder no sound theory can [a claim for damages] be considered as attached to or accessory to the immovable property." *Prados*, 329 So.2d at 751. Thus, a claim for damages, whether it arises under a predial lease or a mineral lease, is a personal right which must be specifically assigned to run with the property.

### III.    *Restoration Damages Under the Mineral Code.*

Lejeune Brothers correctly argues that the Mineral Code provides that a mineral lessee may have tort liability if it unreasonably exercises its rights under a mineral lease. See Article 11 of the Mineral Code (La.R.S. 31:11). Article 122 of the Mineral Code (La.R.S. 31:122) and Article 22 of the Mineral Code (La.R.S. 31:22) set out the restoration duties of the mineral servitude owner and mineral lessee. As Goodrich points out, there was never a mineral servitude because Baez was both the landowner and the lessor from the time the Baez Lease was executed until its complete termination in 1998. Thus, Article 22 and 122 do not provide relief for LeJeune Brothers. Baez possessed a tort claim, however, as set forth earlier, it was never assigned to LeJeune Brothers.

LeJeune Brothers also argues "Goodrich's tortious breach of its obligations under the mineral lease is in the nature of a continuing tort." Under Louisiana law, to have a continuing tort there must be both "continuous conduct" that causes

"continuing damages." *Bustamento v. Tucker*, 607 So.2d 532.

LeJeune Brothers cites *Grefer v. Alpha Technical*, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117, *writ denied*, 05-1590 (La.3/31/06), 925 So.2d 1248, in support of its argument that a continuing tort exists in the present case. In *Grefer*, naturally occurring radioactive material (NORM) built up on the surface of the property through years of cleaning pipes. Exxon eventually discovered the presence of the NORM in 1987 and ceased cleaning the contaminated pipe. The court noted it was "well settled that when a tort involves continuing injury, the cause of action accrues at the time the tortious conduct ceases." *Grefer*, 901 So.2d at 1185, *quoting In re Med. Rev. Panel of Moses*, 00-2643 (La. 5/25/01), 788 So.2d 1173. However, it also held that because "no single incident in the continuous chain of tortious activity can be identified as the cause of significant harm, courts have held it proper to regard the cumulative effect of the conduct as actionable." *Grefer*, 901 So.2d at 1185. Goodrich notes that the court also concluded the continuing tort ended in 1987, when Exxon learned of the NORM and stopped cleaning the pipe. In the present case, the well site was plugged and abandoned in 1987, thus, any alleged tortious conduct ended on that date.

In *Minvielle*, 380 F.Supp.2d 755, which is very similar factually to the present case, the federal court addressed a similar argument that contamination from oil and gas exploration and production activities amounted to a continuing tort.[4] In *Minvielle*, a previous owner of the land in question in 1961 entered into an oil and gas lease to explore and possibly drill for oil on the property. Operations were conducted until 1977, when the well site was plugged and abandoned. The plaintiff in *Minvielle*

---

[4] We note that the attorneys who represented the plaintiff in *Minvielle* are largely the same attorneys who represent LeJeune Brothers in this case. Not surprisingly, many of the arguments advanced to the federal court in *Minvielle* are also advanced again by LeJeune Brothers.

purchased the property in 1998, and sued for damages for the contamination of the property. In regard to the argument that the contamination of the property amounted to a continuing tort, the federal court stated:

> The doctrine of continuing tort presents an exception to the one-year prescriptive period. "A continuing tort is occasioned by [the continual] unlawful acts, not the continuation of the ill effects of an original, wrongful act." *Crump v. Sabine River Authority*, 737 So.2d 720, 728 (1999). Addressing the requirement that there be continuous conduct by the defendant, the Louisiana Supreme Court stated that "[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury." *Id.* at 729 n. 7. In *Crump,* the Louisiana Supreme Court rejected the contention that a continuing breach of duty could consist of a defendant's failure to remedy the harm caused by the initial tortious conduct, stating that "the breach of the duty to right the wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription, as that is the purpose of any lawsuit and the obligation of every tortfeasor." *Id.* at 729.
>
> The Louisiana Supreme Court summarized the doctrine of continuing tort as it applies in Louisiana property law cases as follows:
>
>> When a defendant's damage-causing act is completed, the existence of continuing damages to the plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort. *Derbofen v. T.L. James & Co.*, 355 So.2d 963 (1977), *writs denied*, 357 So.2d 1168, *cert. denied*, 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1978).
>
> *In re Moses*, 788 So.2d 1173, 1183 (La.2001). The practical rule adopted by Louisiana courts in property damage cases is that prescription begins to run when the continuous tortious conduct is abated.
>
> The case law distinguishes between ongoing causes and tortious conduct that has ceased. In cases such as *Patout,* where landfill waste was deposited onto plaintiff's property via trespass, and *South Central Bell,* where gas tanks continued to leak, the ongoing cause was the failure of the defendants to remove the damage causing structure. *Estate of Patout v. City of New Iberia*, 708 So.2d 526 (1998); *South Central Bell Telephone Co. V. Texaco, Inc.*, 418 So.2d 531 (La.1982). In *South Central Bell*, leaking underground storage tanks caused continuous damages to plaintiff's underground telephone wires. Because both the conduct-the leaking-and the damages continued, the tort was held to be a continuous.

In *Mouton v. State of Louisiana*, 525 So.2d 1136 (La.App. 1ˢᵗ Cir. 1988), however, disposal of waste in the ground was not a continuing tort. The court held that the tortious conduct was the dumping of waste onto plaintiff's property and, since it occurred beyond the one year prescriptive period, the action had prescribed. Similarly, in *Badalamenti v. Chevron Chemical Co.*, 1995 WL 386868, (E.D.La.1995), the court found that the tortious conduct at issue was the disposal of waste onto plaintiff's property. The operating cause of plaintiff's injury did not continue beyond the placement of the waste in the ground, and therefore, defendant's alleged conduct did not constitute a continuing tort because there was no ongoing cause. Likewise in *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885-886 (5ᵗʰ Cir.2002), the Fifth Circuit upheld the district court's finding that the continuing tort doctrine was inapplicable. In *Terrebonne v. Mobil,* pursuant to a mineral lease, the defendant dredged a canal during its oil operations. After completion of the operations, the defendant left the canal intact. Plaintiff sued, 40 years later, arguing that the existence of the canal contributed to erosion of its land and the demise of the marshland habitat. The Fifth Circuit found that the unlawful conduct was not continuing because the completed well was abandoned with the canal left intact in 1959. Thus, even though the damage, i.e. the erosion, may have been continuing, the continuing tort doctrine was inapplicable because there was no continuing cause.

Here, like *Mouton,* the tortious conduct was the disposal of waste into plaintiff's property. The operating cause of plaintiff's injury was the actual disposal or storage of the oilfield waste in plaintiff's property. The conduct abated when the defendant's ceased operations, which was in excess of 20 years ago. Simply because the damages brought about by such conduct may have continued, that is insufficient to support application of the continuing tort doctrine. Accordingly, the continuing tort doctrine is inapplicable to the case at bar.

*Minvielle*, 380 F.Supp.2d at 765-66.

In *Crump v. Sabine River Authority*, 98-2326 (La. 6/29/99), 737 So.2d 720, it was alleged the plaintiff negligently dug a canal and that the continued presence of the canal and consequent diversion of water met the requirements of a continuous tort. The Louisiana Supreme Court found this did not amount to a continuing tort and stated:

In the instant case, the plaintiff similarly argues that the mere existence of the canal is the operating cause of daily injury because the effect of its presence is the continuous diversion of the flow of water away from the ox-bow. Relying on our prior decision in *Griffin* [*v. Drainage Commission of New Orleans*, 110 La. 840, 34 So. 799 (1903)], however,

we find that the actual digging of the canal was the operating cause of the injury. The continued presence of the canal and the consequent continuous diversion of water from the ox-bow are simply the continuing ill effects arising from a single tortious act. A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act. *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981), *abrogated on other grounds by*, *Agency Holding Corp. v. Malley Duff & Assocs. Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *Maslauskas v. U.S.*, 583 F.Supp. 349, 351 (D.Mass.1984).

*Id.* at 727-28 (footnote omitted).

Thus, under *Crump*, the digging of the canal was the tortious conduct, not the failure to remove it. Similarly, in *Minvielle*, as in the present case, the tortious conduct was the disposal of waste into plaintiff's property, not the failure to remove it. Therefore, we find the continuing tort doctrine is inapplicable here.

## IV.    *Act 1166 of 2003.*

LeJeune Brothers argues 2003 La. Acts No. 1166, which added La.R.S. 30:2015.1 to Title 30 of the Louisiana Revised Statutes, "empowers landowners to sue for damages to 'usable ground water.'" The statute also required such damages be paid into the registry of the court, thus, insuring they would be specifically used for remediation costs. Subsection I of the statute, which is quoted in part by LeJeune Brothers, provides:

> This Section shall not preclude an owner of land from an award for personal injury or damage suffered as a result of contamination that impacts or threatens usable ground water. This Section shall not preclude an owner of land from an award for damages to or for remediation of any other part of the surface or subsurface of his property and any award granted in connection therewith shall not be paid into the registry of the court, but shall be made directly to the owner of the land. This Section shall not preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the Department of Environmental Quality as may be required in accordance with the terms of an expressed or implied contractual provision. This Section shall not be interpreted to create any cause of action.

The statute clearly states it "shall not be interpreted to create any cause of action" and

"shall not preclude" other remedies for personal injury or for remediation of things other than usable ground water. LeJeune Brothers' argument that this statute was intended to "clarify the rights of landowners who assert claims under private law for remediation damages" is incorrect. The statute applies to the rights of a landowner to collect money for damage to *usable ground water*. We note LeJeune Brothers in its original petition specifically denied it was making a claim under La.R.S. 30:2015.1, stating "[T]he provisions of La.R.S. 30:2015.1 do not apply to this action." Therefore, this assignment of error lacks merit.[5]

## V.   *Judgment Decided Issues not Raised by Goodrich's Motions.*

LeJeune Brothers states it asserted claims for unjust enrichment, claims under La.Civ.Code art. 667, and claims under the Mineral Code. It argues the trial court erroneously dismissed these claims because they were not the subject of any motion for summary judgment or exception filed by Goodrich. We disagree.

Initially, we note claims arising under La.Civ.Code art. 667 and the Mineral Code are tort claims. In a decision holding that actions under La.Civ.Code art. 667 are subject to the one year prescriptive period, the Louisiana Supreme Court stated "a violation of [La.Civ.Code] article 667 constitutes fault within the meaning of [La.Civ.Code] article 2315." *Dean v. Hercules, Inc.*, 328 So.2d 69, 72. In *Ashby v. IMC Exploration Co.*, 496 So.2d 1334 (La.App. 3 Cir. 1986), *affirmed*, 506 So.2d 1193 (La. 1987), this court noted that claims arising under Articles 11, 22 and 122 of the Mineral Code are *ex delicto* claims (torts).

As to unjust enrichment, the law is clear that "[u]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided."

---

[5] In the event that LeJeune Brothers was to claim damages for contamination or remediation costs of usable ground water, La.R.S. 30:2015.1 requires notification of the Department of Environmental Quality prior to assertion of any such claims.

*Mouton v.State,* 525 So.2d 1136, 1142 (La.App. 1 Cir.), *writ denied*, 526 So.2d 1112 (La.1988); *see also Sadler v. Midboe*, 97-2120 (La.App. 1 Cir. 12/28/98), 723 So.2d 1076. As Goodrich acknowledges, it has never been contended that a remedy for any alleged oil and gas contamination is not provided by law; but, that these remedies were not provided to or acquired by LeJeune Brothers. Therefore, LeJeune Brothers has no unjust enrichment claim.

Further, the exception of no right of action filed by Goodrich specifically stated that "LeJeune Brothers has no right of action to institute or maintain this suit." The memorandum filed by Goodrich in support of the exception sought "the dismissal of all remaining claims of the LeJeune Brothers with prejudice at their cost."

## IV. *Third Party Demands and Cross Claims.*

When LeJeune Brothers' claims against Goodrich were dismissed with prejudice, the third party claims and cross claims were rendered moot and dismissed. Tom Brown, Inc. and the Estis family filed a brief arguing that because Goodrich did not appeal the judgment dismissing the third-party demands, that dismissal is final. Thus, they argue, were this court to reverse the dismissal of LeJeune Brothers' claims against Goodrich, the third-party demands cannot be reinstated. As we are affirming the trial court's dismissal of LeJeune Brothers' claims against Goodrich, this argument is rendered moot.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant, LeJeune Brothers, Inc.

**AFFIRMED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1557

LEJEUNE BROTHERS, INC.

VERSUS

GOODRICH PETROLEUM CO., L.L.C., ET AL.

DECUIR, J., dissenting.

LeJeune Brothers, Inc. purchased land in September of 2000 from David Baez, Jr. and months later discovered the property was contaminated with oilfield exploration and production waste. LeJeune Brothers, an owner of one-half of the mineral rights attached to the property, sued the oil and gas producers who contaminated the land. As a basis for its claims, LeJeune Brothers relied in part on a provision of the mineral lease which had given rise to over twenty years of oil production on the subject property: "All provisions hereof shall extend to and bind the successors and assigns (in whole or in part) of Lessor or Lessee." In preliminary proceedings before all of the evidence had been gathered, the trial court granted summary judgment in favor of Goodrich Petroleum, the only remaining defendant, on LeJeune Brothers' contract claim. The trial court also granted the defendant's exception of no right of action on LeJeune Brothers' tort claim and dismissed all other claims asserted. I disagree with the majority's decision to affirm the trial court. Accordingly, I respectfully dissent.

The majority begins with LeJeune's assertion that it succeeded to Baez's rights under the lease and should prevail under the terms of the lease. LeJeune distinguishes *Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 02-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, *writs denied*, 03-1585, 03-1624 (La. 10/31/03), 857 So.2d 476,

wherein this court found that a vendee had no rights under a mineral lease because the predecessor in title had reserved all of the mineral rights. In this case LeJeune emphasizes a critical difference: Baez owned the mineral rights and reserved only half of them in the sale. Hazelwood's ancestor in title had reserved *all* of the mineral rights. By contrast, the sale to LeJeune in the present case reserved only half of the mineral rights to the seller Baez, who was the sole mineral lessor when the lease was granted, and transferred the other half to the buyer, LeJeune Brothers. The mineral lease in *Hazelwood* contained almost identical language to the lease at issue here, which transferred all provisions to the successors of the lessor and the lessee. Had there been no mineral reservation in *Hazelwood*, Hazelwood could have sued as a party to the lease. Likewise, I believe LeJeune Brothers has a valid cause of action in this matter.

Further, I find Goodrich's contention that the lease had terminated to be an irrelevant argument. The mineral lessee had restoration duties during the lease and at its expiration, and the breach of those duties gives rise to LeJeune Brothers' cause of action. LeJeune Brothers can assert its cause of action within ten years of the breach, or within ten years of the expiration of the lease, whichever is later, as contract actions prescribe in ten years. Louisiana Civil Code Article 3499.

Alternatively, LeJeune argues that if this court finds that plaintiff is not a successor or assign of Baez who is entitled to sue under the mineral lease, then plaintiff is a third party beneficiary of the mineral lease as we found in *Hazelwood*. The majority, however, disagrees, relying on the very narrow language of *Broussard v. Northcott Exploration Co., Inc.,* 481 So.2d 125 (La. 1986) to exclude LeJeune's claim. LeJeune Brothers distinguishes *Broussard*, pointing out why it is not applicable. The *Broussard* plaintiff was a tenant farmer, not the mineral lessor or his

2

successor, as in the present case.

The mineral lease in *Hazelwood* contained almost identical language to the lease in the present case: "All the provisions hereof shall extend to and bind the successors and assigns (in whole or, to that extent, in part) of the parties hereto, respectively..." *Hazelwood*, 790 So.2d at 99. Paragraph 9 of the present mineral lease provides identical language and has the same impact as the lease provision in *Hazelwood*. Thus, as in *Hazelwood*, the present lease contains a stipulation *pour autrui* in favor the plaintiff, LeJeune Brothers, the transferee of the property. Hence, LeJeune Brothers is a third party beneficiary under the mineral lease.

The majority then examines the law regarding continuing torts and ultimately determines that LeJeune can find no relief in that doctrine. I disagree. Goodrich's tortious breach of its obligations under the mineral lease is in the nature of a continuing tort. The conduct that forms the basis of the tort in this action is not only the initial contamination, but contamination that continues until this very day. The conduct is also a failure to act or to correct a problem. *Risin v. D.N.C. Investments*, *L.L.C.*, 05-0415 (La.App. 4 Cir. 2005), 921 So.2d 133, 138.

In *Estate of Patout v. City of New Iberia,* 97-1097 (La.App. 3 Cir. 3/6/98), 708 So.2d 526, *writ granted*, 98-961 (La. 7/2/98), 721 So.2d 897, *affirmed by*, 98-961 (La. 7/7/99), 738 So.2d 544, the third circuit held: "Where the defendant erects a structure or dumps rubbish on the land of the plaintiff, the invasion is continued by a failure to remove it. In such a case, there is a continuing wrong so long as the offending object remains." *Id.* at 543, quoting W. Page Keaton, et al., PROSSER AND KEATON ON THE LAW OF TORTS, § 13, at 83 (5th ed. 1984). *See also Grefer v. Alpha Technical*, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117; Second Restatement of Torts, § 161.

Under *Patout* and *Grefer,* the tortious conduct does not cease until the contamination is removed. In this case, not only is it alleged that the contamination has not been removed, it is further alleged that the contamination continues to spread and expand throughout the subsurface and has ever since the toxic contamination was deposited. The alleged tortious conduct that constitutes fault in this matter continues at this very moment. Likewise, Goodrich's alleged failure to stop the spreading and expansion of the contamination also constitutes a continuing tort. LeJeune Brothers has asserted both continuous conduct and continuing damages in its tort action. Accordingly, I believe LeJeune Brothers has a cause of action for a continuing tort.

This is a very complex case and there are many other issues involved. Some of the issues are legal and some involve the development of facts. This is not the type of case in which a partial summary judgment and exception of no right of action should have been granted. LeJeune Brothers, an innocent and unsuspecting landowner, should have its day in court. Therefore, I dissent.