STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-394

CASTEX DEVELOPMENT, LLC.

VERSUS

ANADARKO PETROLEUM CORPORATION, ET AL.

**********

APPICATION FOR SUPERVISORY WRIT FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-502-20
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and Guy E. Bradberry, Judges.

WRIT DENIED.

**James E. Lapeze**
**Jonathan J. Fox**
**Jaclyn E. Hickman**
**Cristian M. Soler**
**Liskow & Lewis**
**701 Poydras Street, Suite 5000**
**New Orleans, LA 70139-5099**
**(504) 581-7979**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Mobil Producing Texas & New Mexico, Inc.**

**Jamie D. Rhymes**
**Liskow & Lewis**
**120 Camellia Boulevard, Suite 300**
**Lafayette, LA 70508**
**(337) 232-7424**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Mobil Producing Texas & New Mexico, Inc.**

**Michael P. Cash**
**Liskow & Lewis**
**1001 Fannin Street, Suite 1800**
**Houston, TX 77002-6756**
**(713) 651-2900**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Mobil Producing Texas & New Mexico, Inc.**

**Donald T. Carmouche**
**Victor L. Marcello**
**John H. Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Todd J. Wimberley**
**Ross J. Donnes**
**D. Adele Owen**
**Leah C. Poole**
**Caroline H. Martin**
**Christopher D. Martin**
**Christopher D. Martin**
**Michael L. Heaton**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
**Castex Development, LLC**

**KYZAR, Judge.**

Defendant-Applicants, Mobil Producing Texas & New Mexico, Inc. (MPTNM), seeks a supervisory writ from the judgment of the trial court denying its motion for partial summary judgment on the issue of contract claims arising from a lease agreement.

## FACTS AND PROCEDURAL HISTORY

This case involves an oilfield contamination lawsuit. Plaintiff, Castex Development, LLC, filed the instant lawsuit alleging that property it owns in Jefferson Davis Parish was damaged as a result of historical oil and gas exploration activities conducted on the property by various companies, including the predecessors of MPTNM and BP America Production Company (BP). These predecessors had conducted oil and gas operations on the property pursuant to a 1954 Oil, Gas, and Mineral Lease, which terminated on January 1, 1984, and a series of surface leases, which had terminated by October 28, 1980.

Plaintiff did not own the property at the time that the alleged damage was sustained, but rather, acquired its intertest in the property from LK & LB, LLC (LKLB) on October 30, 2019, via two cash sales. Prior to finalizing the cash sales, Plaintiff entered into an Agreement Regarding Surface Rights and Claims with various parties, who were referred to as "the mineral owners" and who had transferred their interests in the property to LKLB. That agreement, which was entered into on September 18, 2019, provides that Plaintiff was assigned any rights that the current and prior surface owners had, to sue for past environmental damage or contamination of the property. A similar assignment provision was included in the October 30, 2019 cash sale deeds.

In its original and amended petitions, Plaintiff raises tort claims based on various theories of recovery, as well as contract claims based on alleged breaches of

the mineral and surface leases against MPTNM and BP. BP filed a motion for partial summary judgment, seeking to have Plaintiff's contract claim against it dismissed on the ground that Plaintiff had not been a party to the mineral and surface lease contracts at issue. MPTNM also filed a motion for partial summary judgment, seeking dismissal of Plaintiff's contract claims against it based on the same grounds as those asserted by BP. The two motions were heard together, and both were denied by the trial court.

MPTNM and BP have each filed a writ application with this court, wherein each seeks review of the trial court's denial of their motion. The writ application filed by BP was assigned docket number 23-393, and the writ application filed by MPTNM was assigned docket number 23-394. Although the two writ applications have not been consolidated by this court, they will be addressed together as they involve identical issues.

## DISCUSSION

Applicants take the position that the trial court's denial of their motions was erroneous because Plaintiff was a subsequent purchaser that did not own the property at the time it was damaged. Regarding the subsequent purchaser doctrine, the Louisiana Supreme Court has stated the following:

> The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289, p. 8 (La. 10/25/11), 79 So.3d 246, 256–57.

In *Eagle Pipe*, the plaintiff purchased land in Lafayette Parish and then, two decades later, discovered that there was radioactive material on the land. The property had been contaminated as a result of operations conducted on the property

2

years before the plaintiff's purchase by a lessee that operated a pipe cleaning facility that bought, cleaned, stored, and sold used oilfield tubing. The plaintiff sued the prior landowners, as well as the oil companies that supplied the tubing and the trucking companies that transported the tubing to the property. The plaintiff asserted a redhibition claim against the former landowners and raised claims for breach of contract, negligence, strict liability, fraud, and conspiracy against the oil companies and trucking companies. The defendants filed exceptions of no right of action, asserting that the plaintiff had no right to bring a claim for damage that occurred to the property before the plaintiff acquired ownership of the property. The trial court granted the exception of no right of action and dismissed the plaintiff's claims.

On appeal, the fourth circuit initially affirmed the trial court's ruling but, on rehearing, it reversed the trial court's ruling on the exception of no right of action. *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 09-298 (La.App. 4 Cir. 2/10/10), 47 So.3d 428 (*on rehearing*, 9/8/10). The Louisiana Supreme Court granted writs and then reversed the fourth circuit, holding that in the absence of an assignment of or a subrogation to the prior landowner's rights, the plaintiff did not have the right to sue third parties for nonapparent damage caused to the property before the plaintiff's purchase. *Eagle Pipe*, 79 So.3d 246. In reaching that conclusion, the supreme court found that the right to sue for damages caused to property is not a real right that attaches to property and is automatically conveyed to the subsequent purchaser when the property is sold. Rather, the court found that the owner of the property at the time it was damaged had a personal right to sue for damages caused to the property. The supreme court held that since the right to sue for property damage is a personal right, the subsequent purchaser could only acquire that right via assignment or subrogation.

3

The supreme court also rejected the plaintiff's argument that the subsequent purchaser rule applies only when there is apparent damage to property. Rather, the supreme court held that "whether damage to the property is apparent or not, the personal nature of the right of the landowner at that time does not change, and remains with the landowner unless the right is explicitly assigned or subrogated to another." *Id.* at 276. The supreme court found that although the plaintiff had the right to bring a redhibitory action against the former property owners for rescission of the sale or reduction of the purchase price, it did not have a right of action to bring claims against third parties for damages and remediation of the property.

In the instant case, Applicants argue that based on the subsequent purchaser doctrine addressed in *Eagle Pipe*, Plaintiff herein would not have the right to sue for damage which occurred prior to its ownership of the property unless there was a valid assignment of rights from the former owner to Plaintiff. While Applicants correctly note that Plaintiff has attempted to obtain an assignment of the right to sue from the prior owners of the property, via pre-sale contracts with the mineral owners and via provisions in the cash sale deeds executed at the time Plaintiff purchased the property, they assert that the purported assignment of rights is invalid because of a line of jurisprudence holding that it is not possible to transfer rights under a lease after the lease has expired. The primary case on which Applicants rely in support of their position is *LeJeune Brothers, Inc. v. Goodrich Petroleum Co., L.L.C.*, 06-1557 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, *writ denied*, 08-298 (La. 4/4/08), 978 So.2d 327.

In *LeJeune*, the plaintiff purchased a tract of land from the landowner, in which one-half of the property's mineral rights was reserved by the landowner and one-half was conveyed to the plaintiff. Prior to the plaintiff's purchase, the landowner had leased the property to the defendant for conducting oil and gas

exploration activities, which lease had terminated over two years before the plaintiff acquired the property. After purchasing the property, the plaintiff discovered that the property had been contaminated with waste from the prior lessee's activities. The plaintiff filed an oilfield contamination lawsuit against the defendant and other parties, seeking damages and remediation of the property. In support of its contract claim, the plaintiff relied on a provision in the mineral lease agreement between the prior owner and the defendant, which provided that all provisions of the lease would be binding on the successors and assignees of the lessee and lessors. It is noted, however, that there was no assignment of rights to the plaintiff by the prior owner.

The defendant filed a motion for partial summary judgment asserting, among other things, that the plaintiff did not have a contract claim against it. The trial court granted the defendant's motion, finding that the plaintiff did not have a contract claim against the defendant as it was not a successor or assignee under the mineral lease that had been granted on the property before its purchase. On appeal, this court found that because the mineral lease had expired at least two years before the property was sold to the plaintiff, and the prior owner was not a mineral lessor at the time of the sale, he could not assign any rights under the expired lease. This court expressly stated that it agreed with the plaintiff's assertion that "it was impossible to transfer rights to an assignee under an expired mineral lease." *LeJeune*, 981 So.2d at 28. Additionally, this court found that the plaintiff was not a third-party beneficiary under the mineral lease at issue because the lease agreement between the prior owner and the defendant limited the defendant's liability to only those damages that it caused "to the lessor" through its operations on the property.

In the instant writ applications, Applicants argue that this court's ruling in *LeJeune* is binding authority that prohibits the transfer of rights under a mineral lease after the lease has expired. Applicants note that the mineral lease at issue terminated

5

on January 1, 1984, and that the surface leases at issue had terminated by October 28, 1980. The purported agreement for the assignment of rights under the leases was entered into on September 18, 2019. Thus, Applicants argue that the rights arising under the prior mineral leases could not have transferred to Plaintiff because the leases had expired more than thirty-five years prior to Plaintiff's purchase of the property and its attempted acquisition of the prior owners' rights under the leases. As such, Applicants assert that the trial court should have granted their motions for partial summary judgment and dismissed Plaintiff's contract claims against them.

Applicants contend that in the years following *LeJeune*, this court and several other courts have consistently held that there can be no assignment of the right to sue under an expired lease. Applicants assert that the same issue has come before this court on four separate occasions since *LeJeune* was rendered, and they contend that this court has consistently concluded that it is impossible to transfer rights under an expired lease. Also, Applicants argue that there is no conflict among the courts on this issue because for the past decade, other Louisiana appeals court and federal courts have uniformly held that an assignment of the right to sue under a lease contract cannot be assigned after the contract has expired.

Applicants argue that since it is the law of this circuit that rights under an expired mineral lease cannot be assigned, the trial court erred by intentionally and explicitly ignoring this precedent in denying Applicants' motions. Applicants argue that this court has recognized that a lower court is not free to disregard or reverse the jurisprudence of a higher court even if the lower court feels that the decisions of the higher court are incorrect. As support for this proposition, Applicants point to the statement of this court that "[a]s a court of appeal, we are bound to follow the decisions of our supreme court." *Clavier v. Lay Down Serv., Inc.*, 00-701, p. 5 (La.App. 3 Cir. 12/20/00), 776 So.2d 634, 638, *writ denied*, 01-880 (La. 5/25/01),

793 So.2d 203. We note, however, that the Louisiana Supreme Court has never squarely addressed this issue and has never held that a landowner's rights under an expired lease are not assignable. That said, Applicants argue that the Louisiana Supreme Court has had multiple opportunities to correct such holdings if it deemed them to be incorrect; however, it has declined to do so in writ denials, including a denial in *LeJeune*. However, it is of no importance that the supreme court denied writs in any appellate court case because, as the supreme court has stated, "A writ denial by this Court has no precedential value." *St. Tammany Manor, Inc. v. Spartan Bldg. Corp.*, 509 So.2d 424, 428 (La.1987).

In its opposition to the instant writ applications, Plaintiff argues that the trial court did not err in denying Applicants' motions as *LeJeune* was not a case that involved an assignment of rights. We agree. Therein, this court specifically found "no error on the trial court's part in finding LeJeune Brothers was not a party or assignee to the Baez Lease." *LeJeune*, 981 So.2d at 28. Thus, we agree with Plaintiff that as there was no assignment of rights in a mineral lease, it was not at issue, and any discussion about the assignment of rights under an expired lease was pure dictum. Plaintiff asserts that unlike the plaintiff in *LeJeune*, it actually did acquire an assignment of rights from the prior owners of the surface and mineral rights to the property at issue. It points out that the 1954 mineral lease agreement at issue expressly provides, in Paragraph 8, that the rights of the lessee or lessors, in whole or in part, may be assigned and extended to the parties' heirs, successors, or assigns.

Further, we agree with Plaintiff that this court's holding in *LeJeune*, which found that it is impossible to transfer rights under an expired lease to an assignee, is contrary to the express provisions of La.Civ.Code arts. 1984 and 2642. Louisiana Civil Code Article 1984 provides that "[r]ights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its

7

nature preclude such effects." Louisiana Civil Code Article 2642 provides that "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor." Plaintiff argues that since the obligation to restore property under a mineral lease is not strictly personal, the right to enforce remediation of damage caused to property under a mineral lease is assignable under La.Civ.Code arts. 1984 and 2642. There was no discussion of La.Civ.Code arts. 1984 and 2642 directly governing assignments in *LeJeune* because there was no issue involving an assignment of rights in that matter.

Applicants argue that neither this court nor the trial court can ignore the "longstanding precedent" established by *LeJeune* and other cases which cited or followed the language, which we now conclude was simply dicta. However, an appellate court's comments pertaining to theories of law or issues not essential to the judgment are purely *obiter dicta* and are not binding on the trial court. *See Boyd v. Wackenhut Corp.*, 08-1388 (La. 10/24/08), 993 So.2d 216 (per curiam). Further, we are not bound by the constraints of the common law principle of *stare decisis*:

> The judiciary in Louisiana is a co-equal branch of government along with the legislative and the executive branches. See LA. CONST. ANN. art. II, §§ 1, 2. Professor Symeonides writes that from its inception the Louisiana judiciary had an important role in the formulation of law and done far more than merely apply statutory provisions. S. SYMEONIDES, "THE LOUISIANA JUDGE: JUDGE, STATESMAN, POLITICIAN," LOUISIANA: MICROCOSM OF A MIXED JURISDICTION 89–103 (Vernon Palmer, ed., Carolina Academic Press 1999). Not only does the jurist in a civil law system have more freedom when deciding cases because the judge is not bound by the principle of *stare decisis,* the civil law statutes and codes are usually drafted in more general terms than common-law statutes and thus depend more on judges to render them concrete through judicial interpretation. *Id.*

*Unwired Telecom Corp. v. Par. of Calcasieu*, 03-732, p. 18 (La. 1/19/05), 903 So.2d 392, 405–06.

8

The supreme court in *Eagle Pipe* held that there must be an assignment of rights under a prior lease for a subsequent purchaser to have a right of action to sue under the provisions of that lease. There, suit was filed in 2008, and the lease period for the prior landowner was from 1981 to 1988. The supreme court made no mention that the plaintiff lacked a right of action because the leases had expired, and thus, there could be no valid assignment. Obviously, the supreme court did not apply the dicta from *LeJeune*, although that decision had been decided some four years prior. Indeed, in his concurring opinion, Justice Guidry specifically concluded that the subsequent purchaser could have perfected an assignment of the seller's personal rights to protect its interests:

> Eagle Pipe could have protected its rights at the time of purchase, but apparently failed to do so. The record reflects Eagle Pipe, as a sophisticated purchaser—indeed, it was apparently engaged in the same business as the seller's lessee—neglected to protect its interests, for example, by having the property adequately inspected, by obtaining an express assignment of the seller's personal rights, or by retaining a redhibitory remedy for the rescission of the sale.

*Eagle Pipe*, 79 So.3d at 289.

Plaintiff specifically alleges in Paragraph 22 of its petition that it seeks restoration of the property or damages for failure to do so through its assignment of rights or as a third party beneficiary, as follows:

> Plaintiff herein brings suit under the mineral and surface leases and use agreements that apply to the property at issue in this case. To the extent that the law does not accord plaintiff the right to sue as lessor (or as the assignee or successor of the lessor) under the applicable mineral leases or surface leases, plaintiff asserts claims as third party beneficiary for damages for breach of said mineral leases or surface leases. Defendants have a contractual obligation under the applicable oil, gas, and mineral leases, and under the applicable surface or predial leases, and under La. Civ. Code arts. 2683, 2686, and 2692, to restore plaintiff's property to its original condition. Defendants have failed to satisfy these obligations. Plaintiff's property has been impacted by defendants' use of said property under the applicable mineral and surface leases, and such property has not been restored to its original condition. For the breach of these oil, gas, mineral leases, and surface leases, the defendant is liable to plaintiff for foreseeable and

9

consequential damages occasioned by their failure to perform, as well as the cost of these proceedings and reasonable attorneys' fees to the extent such fees are allowed by contract or applicable law, such as La. R.S. 30:29. Further, plaintiff claims damages for the violation of any personal servitude of use applicable to the property in accordance with the provisions of La. C.C. arts. 576, 577, and 645.

"The Civil Code lease provisions require the mineral lessee to perform certain restoration obligations during the lease term, and these obligations are governed by Civil Code articles 2683, 2686, 2687, and 2692." *Dietz v. Superior Oil Co.*, 13-657, p. 5 (La.App. 3 Cir. 12/11/13), 129 So.3d 836, 841. This includes the obligation "[t]o return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter." La.Civ.Code art. 2683(3). According to Applicants' view, using *LeJeune* and its dicta, a landowner, who has personal rights under the terms of a lease contract to demand that the lessee restore the property to its pre-lease condition, cannot do so himself after expiration of the lease. This is simply not the law, and to so hold would negate the purpose of La.Civ.Code art. 2683(3), despite its clear meaning and intent. The real question is whether the landowner and/or lessor has a right to demand restoration after the expiration of the lease term. Clearly, they do. If they have the personal right, as recognized in *Dietz*, those rights can be enforced both before and after the termination of the lease:

> [La.Civ.Code] art. 2686 provides "[i]f the lessee uses the thing for a purpose other than that for which it was leased or in a manner that may cause damage to the thing, the lessor may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained." [La.Civ.Code] art. 2687 directs that "[t]he lessee is liable for damage to the thing caused by his fault or that of a person who, with his consent, is on the premises or uses the thing." Finally, [La.Civ.Code] art. 2692 provides "[t]he lessee is bound to repair damage to the thing caused by his fault . . . and to repair any deterioration resulting from his . . . use to the extent it exceeds the normal or agreed use of the thing."

10

*Marin*, 48 So.3d at 255–56.

> After outlining the lessee obligations, the *Marin* court reasoned that "while [La.Civ.Code] art. 2683 contains obligations that only arise at the end of the lease . . ., there is absolutely no language to suggest that the other obligations imposed by these codal provisions are not operational until termination of the lease." *Id.* at 256. Here, as in *Marin*, Ms. McDonald's claims involve damages for soil and groundwater contamination. As such, while the leases may still be in effect, these claims are not premature because there is no language in the mineral or civil codes to suggest these claims for damages only arise upon lease termination.

*Dietz*, 129 So.3d at 841 (alterations in original) (quoting *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371 (La. 10/19/10), 48 So.3d 234).

Indeed, the obligation to restore the property does not necessarily arise until after the lease has actually run its course, as recognized in *Dietz*. If the landowner and/or lessor still has the legal, contractual right to demand enforcement of La.Civ. Code art. 2683(3) after the lease's expiration, the right can be assigned unless otherwise prohibited. No such prohibition exists that this court can find.

Having determined that the language relied on from *LeJeune* and propagated by its progeny was pure *obiter dicta*, the trial court was not in error in failing to blindly follow what simply is not supported by our civil law tradition. Additionally, this court has specifically found that leases, which had expired in the 1950s, and which had not been assigned to the new landowner but contained a stipulation *pour autri* for the benefit of the new landowner, permitted that landowner to sue the lessees directly. *Duck v. Hunt Oil Co.*, 13-628 (La.App. 3 Cir. 3/5/14), 134 So.3d 114, *writs denied*, 14-703, 14-709, 14-715, 14-735 (La. 6/13/14), 140 So.3d 1189, 1190. It did not matter that the new landowner bought the land after the leases had expired.

Accordingly, for the foregoing reasons, Mobil Producing Texas & New Mexico, Inc.'s writ application is denied.

11

**WRIT DENIED:**  We find no error in the decision of the trial court denying the Applicant's motion for partial summary judgment as to the contract claims raised against it.