55 So.3d 12 (2010)
Larry WAGONER, et al., Plaintiffs-Appellants
v.
CHEVRON USA INC., et al., Defendants-Appellees.
No. 45,507-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2010.
Opinion Granting Rehearing November 24, 2010.
*15 Talbot, Carmouche & Marcello, Gonzales, LA, by William R. Coenen, III, Victor L. Marcello, John S. DuPont, III, Donald T. Carmouche, John H. Carmouche, Brian T. Carmouche, for Appellants.
Sturgeon & Boyd by John Sturgeon, Jr., Gore & Loy, Ferriday, LA, by Brent S. Gore, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., New Orleans, LA, by Michael R. Phillips, Louis Grossman, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P., Baton Rouge, LA, by G. William Jarman, Richard D. McConnell, Jr., Frilot Partridge, New Orleans, LA, by Patrick A. Talley, Jr., for Appellee, Chevron USA, Inc.
Cook, Yancey, King & Galloway, Shreveport, LA, by Albert M. Hand, Jr., Jason A. Green, Bradley Murchison, Shreveport, LA, by F. John Reeks, Jr., for Appellees, Devon Energy Production, Merit Energy, Merit Management Partners, Merit Energy Partners III, and Merit Energy Partners D-III.
Adams, Hoefer, Holwadel & Eldridge, New Orleans, LA, by D. Russell Holwadel, Gregory O. Currier, Claudia P. Santoyo, *16 Ira J. Rosenzweig, Wall, Bullington, & Cook, L.L.C., New Orleans, LA, by Jonathan R. Cook, Jones, Odom, Davis & Politz, L.L.P., Shreveport, LA, by J. Marshall Jones, Jr., for Appellees, Denbury Onshore, Smith Operating & Management, LSJ Exploration, Diamond South Operating, and Oil & Ale LSJ.
Jeansonne & Remondet, Lafayette, LA, by John A. Jeansonne, Jr., Donovan J. O'Pry, II, Jeansonne & Remondet, by John A. Jeansonne, III, for Appellees, McGowen Working Partners, Sunset Oil & Gas, and Spokane Oil & Gas.
Before BROWN, WILLIAMS, and PEATROSS, JJ.
BROWN, Chief Judge.
The Wagoner family bought a 193-acre tract in the Lake St. John Oil Field in Concordia Parish in September 2004. After the purchase, they discovered that the property had been contaminated and damaged by oil and gas operations. The trial court denied the Wagoners the right to sue the past operators who were responsible for the contamination and damage. The trial court held that this tort/contract action was a personal right and that the owner of real property who sells it after damage has occurred, but without assigning the right to the damages, is the proper person to sue for the damages. The Wagoners have appealed this ruling and other rulings on other exceptions granted by the trial court. We reverse in part and remand.

Facts and Procedure
This action involves a claim for damages to a 193-acre tract of land located in the Lake St. John Oil and Gas Field in Concordia Parish, Louisiana. Plaintiffs[1] filed suit claiming that their property was contaminated by the oil and gas exploration and production activities of defendants.[2]
Operations on the property were begun in 1945 by Chevron pursuant to three mineral leases obtained from the Pasternack family. In June 1999, the Pasternack family sold the property, reserving their mineral interests, in a cash sale to James and Jane Funderburg and David and Dale Steckler. One month later, the Stecklers sold their interest in the property to the Funderburgs. In 2004, plaintiffs purchased the property from the Funderburgs. None of the transfers of surface interests in plaintiffs' chain of title included a specific assignment of the right to sue for property damages. After their purchase, plaintiffs discovered that the subsurface of their property was contaminated with exploration and production waste, in particular, through the use of unlined pits.
From 1945 to 1992, Chevron leased and conducted oil and gas operations on the property now owned by plaintiffs. From 1992 through 2002, Pennzoil (now Devon) conducted operations on the property pursuant to a lease assignment from Chevron. From 2002 to 2004, Merit conducted operations on the property pursuant to a lease assignment from Pennzoil. LSJ and Oil & Ale obtained a lease assignment from Merit in 2002 and contracted with Smith to operate on the property from January *17 through August 2004. Beginning in 2004, McGowan (formerly a defendant, dismissed without prejudice) leased and operated the shallow oil producing horizons beneath the property. The deeper horizons were leased and operated by Denbury after 2004. The original mineral leases obtained in 1939 and 1940 by Chevron remain active today.
Numerous exceptions were filed by the various defendants, and following a hearing on the exceptions, the trial court dismissed all of plaintiffs' claims against Chevron (the original mineral lessee), and Merit and Devon (two of Chevron's assignees). The other defendants, Denbury, LSJ, Oil & Ale, Smith and McGowan, conducted operations on the property after plaintiffs' purchase, and not all of plaintiffs' claims were dismissed. The trial court sustained the following exceptions filed or adopted by reference by all defendants: (a) No Right of Action (as to Chevron, Merit and Devon); (b) Vagueness; (b) No Cause of Action for Strict Liability for Nuisance; (c) No Cause of Action for Strict Liability for Garde or Custody; (d) No Cause of Action for Abnormally Dangerous or Ultrahazardous Activity; (e) No Cause of Action for Breach of Contract or Warranty; (f) No Cause of Action for Punitive Damages; (g) No Cause of Action for Civil Fruits; and (h) No Cause of Action for Unjust Enrichment.
It is from this judgment that plaintiffs have appealed.

Discussion
The function of a no right of action exception is to determine whether plaintiffs belong to the class of persons to whom the law grants the cause of action asserted. Badeaux v. Southwest Computer Bureau, Inc., 05-0612 (La.03/17/06), 929 So.2d 1211; Skannal v. Bamburg, 44,820 (La.App.2d Cir.01/27/10), 33 So.3d 227, writ denied, 10-0707 (La.05/28/10), 36 So.3d 254; Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 09-0298 (La.App. 4th Cir.02/10/10), 47 So.3d 428, reh'g granted, (04/21/10). Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681; Skannal, supra.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendants to anyone under the factual allegations of the petition. Industrial Companies, Inc. v. Durbin, 02-665 (La.01/28/03), 837 So.2d 1207; Cleco Corp. v. Johnson, 01-0175 (La.09/18/01), 795 So.2d 302.
Both the peremptory exceptions of no right and no cause of action present questions of law requiring a de novo review by appellate courts. La. C.C.P. art. 927; Skannal, supra; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App.2d Cir.10/07/09), 22 So.3d 246, writ denied, 09-2420 (La.02/05/10), 27 So.3d 299.

No Right of Action As to Chevron, Merit & Devon
The majority of plaintiffs' assignments of error are related to the trial court's no right of action ruling as to Chevron, Merit & Devon. Defendants have likewise devoted the majority of their arguments on appeal to this ruling.
The oil leases covering the property date back to the 1940's and remain in effect today due to production. All mineral rights were retained by the family of the original lessor (Pasternack) in the deed of sale to the Funderburgs. The 2004 deed of sale to plaintiffs from the Funderburgs does not include a specific assignment of the right to sue for property damages that may have occurred prior to their acquisition of the property.
Chevron's position, and that of the trial court, is that the owner of the land at the *18 time of the alleged damages to the property is the person with the real and actual interest to assert a claim for damages to the land. They argue that the right to assert a claim for property damages is a personal right and is not transferred to new owners merely by the transfer of title to the land. La. C.C. art. 1764. In support they rely on the Third Circuit case of Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 06-1557 (La.App. 3d Cir.11/28/07), 981 So.2d 23, writ denied, 08-0298 (La.04/04/08), 978 So.2d 327.
The Third Circuit in Lejeune Bros., Inc., supra at 32, held that a claim for damages, whether it arises under a predial lease or a mineral lease, is a personal right which must be specifically assigned to run with the property. Therefore, plaintiffs, who did not acquire by specific assignment any rights to pre-acquisition property damages, have no claim for property damages that may have occurred prior to their purchase of the land in question.
However, the First Circuit differed with the Third Circuit in Marin v. Exxon Mobile Corporation, 08-1724, 2009 WL 7004332 (La.App. 1st Cir.09/30/09) (not designated for publication), writs granted, 09-2368 and 2371, (La.02/26/10), 28 So.2d 262. In Marin, Exxon challenged the trial court's denial of its peremptory exception of no right of action. Exxon claimed that plaintiffs had no right, whether based in tort or contract, to sue for pre-acquisition damages. The First Circuit affirmed the trial court stating:
With respect to the pre-acquisition contract claims, Exxon asserts that to have any right of action to enforce any express or implied obligation in a mineral lease, the Breauxs were required to prove that they were a party to the mineral lease or were specifically assigned the right by the lessor. Breaux admitted that he purchased only the surface rights and was not specifically assigned any interest in the mineral rights that are the subject of the lease. Exxon relies on the Third Circuit opinion in Lejeune Brothers, Inc., 981 So.2d at 32, for its proposition that tort and/or contract claims for damages to real property arising from oil and gas operations conducted under a mineral lease constitute a personal right that does not run with the property. As such, a party who purchased property from a mineral rights lessor cannot recover from the lessee for property damage that was inflicted prior to the property purchase.
The Breauxs contend that Exxon's argument ignores the Supreme Court decision in Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475 (La.1991). In that case, plaintiff purchased contaminated property that was burdened with a mineral lease. The seller reserved all mineral rights in the act of sale. After the purchase, Magnolia sued the successor and assignee of the mineral lease seeking remediation of the contamination. Even though most of the damage resulted from a blowout on the property seventeen years before Magnolia purchased it, the Supreme Court held that Magnolia had a right to restoration. The Supreme Court specifically held "Magnolia's right to recover damages is a property right arising out of the original lease and attached to the property." Magnolia Coal Terminal, 576 So.2d at 483.
In the instant case, the Breauxs contend that the CBT lease was still in effect at the time they purchased the property. Alternatively, they argue Exxon came forward with no proof at the hearing that the lease was not still active. The Breauxs distinguish Lejeune Brothers on the basis that the mineral lease had expired in Lejeune Brothers prior to the *19 plaintiff's purchase of the property. Indeed, the lease at issue in Lejeune Brothers had terminated over two years prior to Lejeune Brother's acquisition of the property. Lejeune Brothers, 981 So.2d at 28. As such, the Third Circuit held it was impossible to transfer rights to an assignee under an expired mineral lease. Lejeune Brothers, 981 So.2d at 28. Moreover, we agree with the Breauxs' assertion that Lejeune Brothers does not attempt to explain or distinguish Magnolia, which is controlling Louisiana Supreme Court precedent.
Thus, applying these precepts to the record before us, we are unable to find that the trial court committed factual or legal error in denying Exxon's exception of no right of action and, thus, maintaining the claims of the Breauxs.
We agree that the Third Circuit in Lejeune did not explain or distinguish Magnolia Coal Terminal, supra, and concur in the First Circuit's conclusion that Magnolia Coal Terminal correctly recognized that the right to restoration of damaged property is a real right and as such, attaches to the property.
The Supreme Court in Magnolia Coal, supra, citing Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (La.1969), found that the plaintiff was a third party beneficiary with a right to recover pre-acquisition restoration damages under a damage provision of the mineral lease.
The Mineral Code places the lessee under an obligation to act as a prudent operator as to both surface and subsurface. An assignment does not relieve the lessee (Chevron) of its obligation "under the mineral lease." La. R.S. 31:129. A mineral lease is a real right and burden on the immovable. The present landowner, who has no mineral interest, may not prohibit the lessee or its assigns access to the land. The surface owners are subject to the real obligation of the leasehold owners' surface rights. The leasehold owners, including Chevron, Merit and Devon, have a continuing and correlative responsibility as to the surface owner. La. C.C. art. 1763 states that "[A] real obligation is a duty correlative and incidental to a real right."
We thus reverse the trial court's ruling in favor of Chevron, Merit and Devon granting their no right of action exception.

Plaintiffs have no cause of action against defendants for civil fruits or storage.
Plaintiffs argue that they have a cause of action for civil fruits or storage because defendants, as trespassers and therefore bad faith possessors, have derived an economic benefit from their storage of hazardous waste on plaintiffs' land without permission. According to plaintiffs, the economic benefit of this storage is equal to the cost that defendants would have incurred had their waste been properly disposed of/stored elsewhere. Plaintiffs urge that the economic benefit reaped by defendants qualifies as a civil fruit under La. C.C. art. 551.
La. C.C. art. 486 provides in part that a possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses. La. C.C. art. 551 defines fruits as things that are produced by or derived from another thing without diminution of its substance. Article 551 further specifies that civil fruits are revenues derived from another thing, such as rentals, interest, and certain corporate distributions.
The "savings" or economic benefit realized by defendants in disposing of/storing their waste or byproducts on the property rather than disposing of/storing them offsite does not qualify as a "fruit" much less as a "civil fruit." Nothing was produced *20 by or derived from the property as a result of the storage/disposal of oilfield waste, and there were no revenues, such as rentals, interest or a corporate distribution, derived from the property by virtue of the storage/disposal of oilfield waste. Furthermore, plaintiffs do not have a cause of action for compensation for the storage of defendants' waste on their property. This exception of no cause of action in favor of all defendants was properly sustained by the trial court.

Plaintiffs have no cause of action against defendants for punitive/exemplary damages.
Plaintiffs assert that the trial court erred in sustaining defendants' exception of no cause of action for punitive damages. As pointed out by defendants, the court minutes, as well as the trial court's written reasons for judgment, clearly indicate that plaintiffs, in open court, explicitly waived their claims for punitive/exemplary damages. There is no merit to this assignment of error.

Conclusion
For the reasons set forth above, the trial court's judgment is reversed as to the exception of no right of action filed by Chevron, Merit & Devon, and affirmed in all other respects and remanded. Costs are assessed to defendants, Chevron, Merit & Devon.
REVERSED IN PART, AFFIRMED IN PART, and REMANDED.

Opinion on Rehearing
Before BROWN, WILLIAMS, STEWART, PEATROSS & MOORE, JJ.
PEATROSS, J., on rehearing.
We granted rehearing in this case for the purpose of deciding whether Plaintiffs have a right of action against Defendants. In this contract/tort action for damages, Plaintiffs,[1] the Wagoners, filed suit against Defendants[2] in 2008, claiming that their property had been contaminated and damaged by oil and gas operations which took place prior and subsequent to their purchase of the land in 2004. After a hearing on exceptions, the trial judge granted the exceptions of no right of action filed by Chevron U.S.A. Inc. (Chevron), Devon Energy Production Company, L.P. (Devon) and Merit Energy Company, L.L.C. (Merit),[3] thereby dismissing them as parties to this suit. The trial judge denied the exceptions of no right of action filed or adopted by all other Defendants, leaving them remaining as parties to the suit. The trial judge also granted numerous other exceptions of no cause of action filed or adopted by all Defendants. It is from this judgment that the Wagoners appeal. For the reasons stated herein, we affirm.

FACTS
This action involves a claim for damages to a 193-acre tract of land located in the Lake St. John Oil and Gas Field in Concordia Parish, Louisiana. Operations on the property were commenced by Chevron in 1945 pursuant to three mineral leases *21 obtained from the previous owners, the Pasternack family. In June 1999, the Pasternack family sold the property, reserving their mineral interests, in a cash sale to James and Jane Funderburg and David and Dale Steckler. One month later, the Stecklers sold their interest in the property to the Funderburgs. In 2004, Plaintiffs purchased the property from the Funderburgs. None of the transfers of the surface interests in Plaintiffs' chain of title included a specific assignment of the right to sue for property damages. After purchasing the land from the Funderburgs, Plaintiffs discovered that the subsurface of their property was contaminated with exploration and production waste, particularly through the use of unlined pits. Plaintiffs filed suit in August 2008, claiming that their property was contaminated by the oil and gas exploration and production activities of Defendants.
From 1945 to 1992, Chevron leased and conducted oil and gas operations on the property now owned by Plaintiffs. From 1992 through 2002, Devon (previously named Pennzoil) conducted operations on the property pursuant to a lease assignment from Chevron. From 2002 to 2004, Merit conducted operations on the property pursuant to a lease assignment from Devon. LSJ Exploration and Oil & Ale LSJ obtained a lease assignment from Merit in 2002 and contracted with Smith Operating and Management Company to operate on the property from January through August 2004. Beginning in 2004, McGowan Working Partners (formerly a defendant, dismissed without prejudice) leased and operated the shallow oil-producing subsurfaces beneath the property. The deeper subsurfaces were leased and operated by Denbury Onshore after 2004.
As previously stated, numerous exceptions were filed by various Defendants; and, following a hearing on the exceptions, the trial judge granted the exceptions of no right of action filed by Chevron (the original mineral lessee), Merit and Devon (two of Chevron's assignees), thereby dismissing them from this suit. The trial judge overruled the exceptions of no right of action filed by all other Defendants who conducted operations on the property after Plaintiffs' purchase of the land, thus leaving them remaining as parties to the suit.
Additionally, the trial judge sustained the following exceptions filed or adopted by all Defendants: (A) Vagueness; (B) No Cause of Action for Strict Liability for Nuisance; (C) No Cause of Action for Strict Liability for Garde or Custody; (D) No Cause of Action for Abnormally Dangerous or Ultrahazardous Activity; (E) No Cause of Action for Breach of Contract or Warranty; (F) No Cause of Action for Punitive Damages; (G) No Cause of Action for Unjust Enrichment; and (H) No Cause of Action for Civil Fruits.
This appeal ensued.

DISCUSSION
Plaintiffs' first ten assignment of errors assert that the trial judge erred in granting the exceptions of no right of action filed by Chevron, Merit and Devon. Plaintiffs' final two assignments of error involve their contend that the trial judge erred in sustaining various exceptions of no cause of action advanced by all or some Defendants.
Exceptions of no cause of action and no right of action are both peremptory exceptions, the function of which is "to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923; Waggoner v. America First Ins., 42,863 (La.App.2d Cir.1/16/08), 975 So.2d 110. Both exceptions of no right and no cause of *22 action present questions of law requiring a de novo review by appellate courts. La. C.C.P. art. 927; Skannal v. Bamburg, 44,820 (La.App.2d Cir.1/27/10), 33 So.3d 227, writ denied, 10-0707 (La.5/28/10), 36 So.3d 254; Taylor v. Dowling Gosslee & Associates, Inc., 44,654 (La.App.2d Cir.10/7/09), 22 So.3d 246, writ denied, 09-2420 (La.2/5/10), 27 So.3d 299.
Only a person having a real and actual interest to assert may bring an action. La. C.C.P. art. 681; Skannal v. Bamburg, supra. The peremptory exception of no right of action is used to show that a plaintiff has no legal right or interest in enforcing the matter asserted, based upon the facts and evidence submitted. La. C.C.P. art. 927; Richland Parish Police Jury v. Debnam, 42,421 (La.App.2d Cir.10/17/07), 968 So.2d 294, writ denied, 08-0016 (La.3/24/08), 977 So.2d 953; Dufour v. Westlawn Cemeteries, Inc., 94-81 (La.App. 5th Cir.6/28/94), 639 So.2d 843. The burden of proof of establishing the exception of no right of action is on the exceptor. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748; Richland Parish Police Jury v. Debnam, supra; Dufour v. Westlawn Cemeteries, Inc., supra.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Kinchen v. Livingston Parish Council, 07-0478 (La.10/16/07), 967 So.2d 1137; Fink v. Bryant, 01-0987 (La.11/28/01), 801 So.2d 346. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Kinchen v. Livingston Parish Council, supra; Fink v. Bryant, supra. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. Id. The exception is triable on the face of the pleadings and for the purposes of determining the issues raised by the exception; the well-pleaded facts in the petition must be accepted as true. Id.

I. Exceptions of No Right of Action as to Chevron, Merit & Devon

a. The Subsequent Purchaser Doctrine
Plaintiffs assert that the trial judge committed error (1) in sustaining Defendants'[4] exceptions of no right of action on the basis of the subsequent purchaser doctrine, (2) in failing to find that Plaintiffs have a right of action as third party beneficiaries of the mineral leases obtained by Defendants, and (3) in failing to follow Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475 (La.1991).
Operations on Plaintiffs' property were initialized by Chevron in 1945 pursuant to mineral leases obtained from the owners at that time, the Pasternack family. The oil leases covering the property remain in effect today due to production. All mineral rights were retained by the Pasternack family in the deed of sale of the land to the Funderburgs. The 2004 deed of sale from the Funderburgs to Plaintiffs does not include a specific assignment of the right to sue for property damages that may have occurred prior to their acquisition of the property.
The general rule, often referred to as the subsequent purchaser doctrine, is *23 that a purchaser cannot recover from a third party for property damage inflicted prior to the sale. St. Jude Medical Office Bldg. Ltd. Partnership v. City Glass and Mirror, Inc., 619 So.2d 529 (La.1993); Lejeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 06-1557 (La.App. 3d Cir.11/28/07), 981 So.2d 23, writ denied, 08-0298 (La.4/4/08), 978 So.2d 327; St. Martin v. Mobil Exploration & Producing U.S. Inc., 224 F.3d 402 (5th Cir.2000). It is the landowner at the time of the alleged damages who has the real and actual interest to assert a claim. Lejeune Brothers, Inc. v. Goodrich Petroleum Co., supra; Dorvin Land Corp. v. Jefferson Parish, 469 So.2d 1011 (La.App. 5th Cir.1985); St. Martin v. Mobil Exploration & Producing U.S. Inc., supra.
The right to damages conferred by a lease, whether arising under a mineral lease or a predial lease, is a personal right, not a property right; and, as a personal right, it does not pass to the new owners of the land when there is no specific conveyance of that right in the instrument of sale. La. C.C. art. 1764; Prados v. South Central Bell Tel. Co., 329 So.2d 744 (La.1975); Lejeune Brothers, Inc. v. Goodrich Petroleum Co., supra. The reasoning behind these principles is that the buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to a sales price. Prados v. South Central Bell Telephone Co., supra; Lejeune Brothers, Inc. v. Goodrich Petroleum Co., supra.
The Wagoners were not parties to the mineral leases obtained by Chevron from the Pasternack family. When the Wagoners purchased the land in 2004, the deed of sale contained no express assignment of the right to sue mineral lessees for property damages that occurred prior to their acquisition of the property. Additionally, there is no language in the mineral leases constituting a stipulation pour autrui thereby allowing the Wagoners the right to sue for damages as third party beneficiaries to the leases. Magnolia Coal Terminal v. Phillips Oil Co., supra; Andrepont v. Acadia Drilling Company, 255 La. 347, 231 So.2d 347 (La.1969); Lejeune Brothers, Inc. v. Goodrich Petroleum Co., supra; Hazelwood Farm, Inc. v. Liberty Oil and Gas Corp., 01-0345 (La.App. 3d Cir.6/20/01), 790 So.2d 93, writ denied, 01-2115 (La.7/26/01), 794 So.2d 834.
In Magnolia Coal Terminal v. Phillips Oil Co., supra, the mineral lease at issue contained a clause stipulating that "Lessee shall pay for all damages caused by Lessee's operations, including damage to ... soil and other property...." This clause created an obligation on the part of the lessee to pay for property damages resulting from its operations, regardless of who owned the property at any given time and regardless of whether that property owner was a party to the lease. Consequently, the plaintiff property owners in Magnolia Coal Terminal v. Phillips Oil Co., supra, were considered third party beneficiaries to the lease. Since the mineral leases at issue in the case sub judice do not contain language conferring third party beneficiary rights to the Wagoners, this case is distinguishable from Magnolia Coal Terminal v. Phillips Oil Co., supra.
In summary, the right to sue for property damages conferred by the mineral leases obtained by Defendants is a personal right which did not pass to the Wagoners by virtue of their purchase of the land. Additionally, there was no express conveyance of that right in the instrument of sale. Accordingly, Plaintiffs have no right to sue for pre-acquisition property damages under the mineral leases obtained by Chevron, Merit and Devon.

*24 b. The Mineral Code

Plaintiffs also claim that the trial judge erred in failing to consider Articles 11, 128 and 129 of the Mineral Code when he granted Defendants' exceptions of no right of action. La. R.S. 31:11; La. R.S. 31:128-29. A mineral lessee may have tort liability if it unreasonably exercises its rights under a mineral lease. La. R.S. 31:11; Lejeune Brothers, Inc. v. Goodrich Petroleum Co., supra. The owner of a mineral servitude is entitled to use only so much of the land as is reasonably necessary to conduct his operations. La. R.S. 31:22. He is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time. Id. A mineral lessee is bound to perform the contract in good faith and to develop and operate on the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. La. R.S. 31:122.
To the extent of the interest acquired, an assignee or sublessee acquires the rights and powers of the lessee and becomes responsible directly to the original lessor for performance of the lessee's obligations. La. R.S. 31:128. An assignor or sublessor is not relieved of his obligations or liabilities under a mineral lease unless the lessor has discharged him expressly and in writing. La. R.S. 31:129.
We agree with the position of the trial judge, as well as that of Defendants, that these Mineral Code articles contemplate and govern the reciprocal relationship between the lessor and the lessee; and, since Plaintiffs are not lessors or parties to the leases obtained by Defendants, nor were they assigned rights under the leases as third party beneficiaries, they have no general right of action under Articles 11, 128 and 129 of the Mineral Code.

c. Continuing Tort, Nuisance, Trespass & Independent Right of Action in Tort
Plaintiffs further contend that the trial judge erred in failing to find they had a right of action against Defendants based on: (1) the doctrine of continuing tort, (2) nuisance (La.C.C. art. 667), (3) trespass and (4) independent tort theory. Plaintiffs contend that Chevron's failure to remediate the leaking pits and to restore the condition of the land is causing their property to increasingly deteriorate and, thus, constitutes a continuing tort. Plaintiffs assert that, as a result, they have a right to sue for the pre-acquisition damages to their property. As previously mentioned, Plaintiffs purchased the land at issue in 2004 and brought suit four years later in 2008.
In the circumstances of a continuing tort, the nature of the alleged conduct has the dual effect of rendering such conduct tortious and of delaying the commencement of prescription. Bustamento v. Tucker, 607 So.2d 532 (La.1992). To have a continuing tort, there must be "continuous conduct" that causes "continuous damages." Id. To determine whether a continuing tort exists, "[t]he court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen." Marin v. Exxon Mobil Corp., 09-2368, 09-2371 (La.10/19/10), 48 So.3d 234; Hogg v. Chevron USA, Inc., 09-2632, 09-2635 (La.7/6/10), 45 So.3d 991. "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act." Marin v. Exxon Mobil Corp., supra; Crump v. Sabine River Authority, 98-2326 (La.6/29/99), 737 So.2d 720.
*25 The failure to contain or properly remediate the leakage does not constitute a continuing wrong because the failure to remediate was not the operating cause of the damage; the leakage was. Marin v. Exxon Mobil Corp., supra; Hogg v. Chevron USA, Inc., supra. The breach of a duty to right an initial wrong is not considered a continuing wrong that suspends the running of prescription. Marin v. Exxon Mobil Corp., supra; Crump v. Sabine River Authority, supra.
In the case sub judice, the alleged operating cause of the contamination on Plaintiffs' property was the use of the unlined pits. Chevron's use of the pits terminated prior to 1990. Chevron's failure to remediate the leakage from the pits does not constitute a continuing wrong because the failure to remediate was not the cause of the damage; the leakage was. Marin v. Exxon Mobil Corp., supra; Hogg v. Chevron USA, Inc., supra. Consequently, the continuing tort doctrine is inapplicable to this case.
Even assuming that Plaintiffs did have a right of action in one or more tort claims, we agree with the trial judge that any and all of those tort claims would be prescribed. Delictual actions are subject to a liberative prescription of one year. La. C.C. art. 3492. La. C.C. art. 3493 provides, however, that "[w]hen damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage[.]" La. C.C. art. 3493.
Knowledge sufficient to start the running of prescription is considered "the acquisition of sufficient information, which, if pursued, will lead to the true condition of things." Marin v. Exxon Mobil Corp., supra; Young v. International Paper Co., 179 La. 803, 155 So. 231 (La. 1934). The ultimate issue in determining whether a plaintiff had constructive knowledge sufficient to commence a prescriptive period is the reasonableness of the plaintiff's action or inaction in light of his education, intelligence and the nature of the defendant's conduct. Marin v. Exxon Mobil Corp., supra; Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502; Griffin v. Kinberger, 507 So.2d 821 (La.1987).
The Wagoners waited to bring suit until four years after they purchased the property at issue, but they claimed in their original petition that they discovered the damages "less than one year" prior to filing suit. When purchasing the property, however, Plaintiffs were fully aware that they were only purchasing the surface rights to the property and that the mineral rights had been retained by previous owners who had sold the property in 1999, with mineral leases encumbering the land since 1945. Information was, therefore, readily available to Plaintiffs via public conveyance records and the records of the Office of Conservation indicating that there had been active oil lease operations for nearly 60 years on the land they had decided to purchase. Plaintiffs could have easily acquired knowledge of the property damage resulting therefrom within their first year of owning the property.
Consequently, we find that Plaintiffs "acquired, or should have acquired, knowledge of the [property] damage" on their land more than one year prior to bringing suit in August 2008. La. C.C. art. 3493. As a result, we find that, even if Plaintiffs had a right of action in tort, any and all tort claims asserted by Plaintiffs have prescribed.
Given our finding that the continuing tort doctrine is inapplicable to this case and that any other tort claims brought by Plaintiffs in this suit have prescribed, we pretermit discussion of Plaintiffs' assignments *26 of error relating to nuisance (La. C.C. art. 667), trespass or independent right of action in tort.

d. Act 312 (La. R.S. 30:29)
Plaintiffs also complain that the trial judge erred in failing to find that they have a right of action against Defendants pursuant to La. R.S. 30:39. Plaintiffs argue that La. R.S. 30:29(H), i.e., Act 312, creates a right of action in their favor by "specifically referring to the `owner of the land' as the party with the right of action."
La. R.S. 30:29(H) provides:
This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may be required in accordance with the terms of an express contractual provision. Any award granted in connection with the judgment for additional remediation is not required to be paid into the registry of the court. This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease. (Emphasis added).
On reviewing the plain wording of the statute as emphasized above, as well as applicable Louisiana Supreme Court jurisprudence, we agree with the trial judge that La. R.S. 30:29 is procedural, rather than substantive, and does not create a right of action in favor of landowners. M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La.7/1/08), 998 So.2d 16.
In conclusion, we find that the trial judge properly sustained the exceptions of no right of action advanced by Defendants and, further, that the first ten assignments of error asserted by Plaintiffs are without merit.
Considering our finding that Plaintiffs do not have a right of action in contract or tort against Chevron, Merit or Devon, we pretermit discussion of Plaintiffs' contention that Chevron, Merit and Devon are solidary obligees with the other remaining Defendants[5] in this suit.

II. No Cause of Action for Punitive/Exemplary Damages
In their eleventh assignment of error, Plaintiffs assert that the trial judge erred in sustaining Defendants' exceptions of no cause of action for punitive damages. As pointed out by Defendants, the court minutes, as well as the trial judge's written reasons for judgment, clearly indicate that Plaintiffs, in open court, explicitly waived their claims for punitive/exemplary damages. The trial judge did not err in sustaining this exception of no cause of action.
This assignment of error is without merit.

III. No Cause of Action for Civil Fruits or Storage
In their final assignment of error, Plaintiffs argue that they have a cause of action for civil fruits or storage because Defendants, as trespassers and, thus, bad faith possessors, have derived an economic benefit from their storage of hazardous waste on Plaintiffs' land without permission. According to Plaintiffs, the economic benefit of this storage is equal to the cost *27 that Defendants would have incurred had their waste been properly disposed of or stored elsewhere. Plaintiffs urge that the economic benefit reaped by Defendants qualifies as a civil fruit under La. C.C. art. 551.
La. C.C. art. 486 provides in part that a possessor in bad faith is bound to restore to the owner the fruits he has gathered, or their value, subject to his claim for reimbursement of expenses. La. C.C. art. 551 defines fruits as things that are produced by or derived from another thing without diminution of its substance. Article 551 further specifies that civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest and certain corporate distributions. La. C.C. art. 551.
The "savings" or economic benefit realized by Defendants in storing/disposing of their production waste/byproducts on the property rather than storing/disposing of them offsite does not qualify as a "fruit" or a "civil fruit." Nothing was produced by or derived from the property as a result of the storage/disposal of the waste; and, further, there were no revenues, such as rentals, interest or a corporate distribution, derived from the property by virtue of the storage/disposal of the waste.
Further, given our finding that the production waste/byproducts on Plaintiffs' land do not qualify as fruits or civil fruits, Plaintiffs do not have a cause of action for compensation for the storage/disposal of the production waste/byproducts on their property. Accordingly, we find that the trial judge did not err in sustaining this exception of no cause of action.
This assignment of error is without merit.

CONCLUSION
For the reasons set forth herein, we affirm the trial court's judgment granting the exceptions of no right of action in favor of Chevron, Merit and Devon, denying the exceptions of no right of action advanced by the other Defendants and granting all other exceptions advanced or adopted by Defendants. Costs are assessed to Plaintiffs.
AFFIRMED.
BROWN, C.J., dissents with reasons.
BROWN, Chief Judge, dissenting.
I respectfully dissent.
Initially, a panel of this court unanimously reversed a trial court's grant of certain exceptions of no right of action filed by mineral lessees, Chevron, Devon and Merit. Rehearing, however, was granted because of a similar case pending before the Louisiana Supreme Court. That case, Marin v. Exxon Mobil Corp., 09-2368, 48 So.3d 234 (La.10/19/10), has now been decided; however, disappointingly, in Marin, the supreme court did not reach an opinion on the issue that is specifically presented in the case sub judice. In that case, in a footnote, the majority opinion states:
We note that one of the reasons we granted this writ was to determine whether a subsequent purchaser has the right to sue for property damages that occurred before he purchased the property, particularly where the damage was not overt. However, we need not reach that determination in this case because, assuming the Breauxs had a right as a subsequent purchaser to sue in tort for property damage, that right has prescribed. Further, we note that regardless of who has standing to pursue claims for money damages, the current owner of property always has the right to seek a regulatory cleanup of a contaminated *28 site. La. R.S. 30:6(F); La. R.S. 30:16. (Emphasis theirs).
The circuit courts are split on whether a subsequent purchaser has the right to sue for property damages that occurred before he purchased the property. Although recognizing the need to resolve this question, the supreme court was unable to agree and passed. Thus, the only supreme court decision extant is Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475 (La.1981). In that case, plaintiff purchased contaminated property that was burdened with a mineral lease. The seller reserved all mineral rights in the act of sale. After the purchase, Magnolia sued the successor and assignee of the mineral lease seeking remediation of the contamination. Even though most of the damage resulted from a blowout on the property 17 years before Magnolia purchased it, the Louisiana Supreme Court held that Magnolia had a right to restoration. The supreme court specifically held that "Magnolia's right to recover damages is a property right arising out of the original lease and attached to the property." Magnolia Coal Terminal, 576 So.2d at 483.
What is also clearly expressed in the Marin footnote is that the current landowner can sue for remediation of his property. La. R.S. 30:29. See also M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371, (La.07/01/08), 998 So.2d 16. This would include as defendants the mineral servitude owner, i.e. the lessor, as well as the lessee. Even so, the majority now on rehearing holds that the current owners of the surface, the Wagoners, have no right of action against the prior mineral lessees, Chevron, Devon and Merit.
Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts. La. C.C.P. art. 681. The majority on rehearing reasoned that a landowner at the time of injury is the only person who has a real and actual interest in the land and that this interest is a personal right that does not run with the land absent an expressed assignment. Because the Wagoners were not the owners of the property at the time of the injury and because their deed did not have an assignment of subsequently arising causes of action, the majority holds that plaintiffs have no right of action. I respectfully disagree.
The Mineral Code is clear that a mineral lease is a real right. La. R.S. 31:16 provides:
The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence. (Emphasis added).
Comments following La. R.S. 31:16 state, "All things considered, the lease has the major characteristics of a real right: the mineral lease may follow the land, regardless of transfers of ownership; the mineral lessee (or holder of a mineral servitude) may assert his rights against the world just as the proprietor of any other real right; he may enjoy directly and draw from the land a part of its economic advantages by appropriating a wasting asset; he has certain rights of preference; and he holds a right that is in reality susceptible of a type of possession through exercise."
In the case sub judice, the mineral lease from the Pasternacks to Chevron came first. Then, the Pasternacks became mineral servitude holders when they sold the property to the Funderburgs with a reservation of the minerals. The Funderburgs *29 thereafter sold the property to the Wagoners.
Because of production, the mineral servitude remains viable and the current owners of the property are subject to the real obligations and burdens of the mineral servitude and lease. "The owner of the dominant estate may not make a use of the servitude that aggravates the condition of the servient estate. Whether a particular use results in aggravation of the condition of the servient estate is a question of fact, determined in light of the circumstances of each case. Courts take into account the situation of the estates, the needs of the dominant estate, and the prejudice, if any, sustained by the owner of the servient estate." A.N. Yiannopoulos, 4 Louisiana Civil Law Treatise, Predial Servitudes, § 156 (3d ed.2004). See also Dupree v. Oil, Gas & Other Minerals, 31,869 (La. App.2d Cir.05/05/99), 731 So.2d 1067.
The Mineral Code places the lessee under an obligation to act as a prudent operator as to both surface and subsurface. An assignment does not relieve the lessees (Chevron, Merit and Devon) of their obligation "under the mineral lease." La. R.S. 31:129. Likewise, the Code places the mineral servitude owner under an obligation to respect the rights of the surface owner. La. R.S. 31:22. A mineral lease and servitude are real rights and burdens on the immovable. The surface owners are subject to these real obligations. Chevron, Merit and Devon have a continuing and correlative responsibility as to the surface owners, the Wagoners.
Two recent appellate cases have rejected the subsequent purchaser doctrine. They are the First Circuit's decision in Marin v. Exxon Mobil Corp., 08-1724 (La.App. 1st Cir.09/30/09), 2009 WL 7004332 (as previously stated, on review the supreme court declined to address this issue), and the Fourth Circuit's decision in Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 09-0298 (La.App. 4th Cir.02/10/10), 47 So.3d 428.
In Eagle Pipe and Supply, Inc., plaintiffs purchased land that they later discovered was contaminated with radioactive waste. Initially, the majority held that because the contamination occurred under a lease prior to purchase, and the personal (as opposed to a real) right to recover damages therefrom was not expressly assigned by the former owners, plaintiffs had no right of action. On rehearing in Eagle Pipe and Supply, Inc., supra, a new majority reversed the earlier decision and held that plaintiffs were in fact the party who sustained injury and rejected the subsequent purchaser doctrine. Writing for the majority on rehearing, Judge Bonin stated:
The general rule regarding the assertion of a real and actual interest is contained in La. C.C. art. 2315(A): "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The complex factual background of the current case, involving the subsequent purchase of property with a hidden defect, does not present sufficient reason to depart from the fundamental principles of injury and reparation ...
The injury is not dispelled by a subsequent purchase, and therefore we see no reason why the right to seek remedy for it should be. The injured party should not be precluded from seeking reparation merely because the damage remained hidden long enough for the property to be sold. In such cases, injury is deemed to occur when the damage is, or should have been, discovered. See, e.g., Ricks v. Kentwood Oil Co., Inc., 09-0677 (La.App. 1st Cir.02/23/10), 38 So.3d 363 ("triggering event" for coverage of emotional and mental distress damages was *30 date of discovery, as opposed to date of harmful conduct, where test of well's water indicated presence of toxic substances from non-overt gasoline leak caused by oil company's underground storage unit) ...
Eagle Pipe has lost the use of its land and will incur the cost of remediating the property; its property has clearly been damaged by the depositing of radioactive materials. The oil companies and transporters, if deemed responsible, are therefore obliged to make reparations to "him who suffered the injury." Citation omitted. As a party "who suffered [an] injury," Eagle Pipe enjoys a right of action.
Therefore, applying La. C.C. art. 2315 and the Clark line of cases, we hold that: (1) the manifestation of radioactive contamination allegedly caused by defendants constitutes an injury giving rise to a legitimate cause of action; (2) the previous owners sustained no injury through the sale of the land because they allegedly received full value for their interest as if it were uncontaminated; (3) Eagle Pipe is an injured party because the damage manifested itself after Eagle Pipe's purchase of the land, thus devaluing Eagle Pipe's acquisition and requiring its remediation, and (4) as an injured party, Eagle Pipe is deserving of reparation.
In the instant case, the landowners, the Wagoners, who are naked of any mineral ownership and subject to two real rights/dominant estates, can sue under the mineral code the lessees and servitude holder to clean up their property. La. R.S. 31:122, 129 and 22. Incidental and ongoing damages to the servient estate are likewise recoverable.
NOTES
[1] Larry Wagoner, Jean Wagoner, Russell G. Wagoner, Angela C. Wagoner, Roy Wagoner, and Ivie Wagoner.
[2] Chevron U.S.A. Inc., Devon Energy Production Company L.P., McGowan Working Partners, Inc., Merit Energy Company, LLC, Merit Management Partners I, L.P., Merit Energy Partners III, L.P., Merit Energy Partners D-III, L.P., Smith Operating & Management Co., Spokane Oil & Gas, LLC, Sunset Oil & Gas, L.L.C., Denbury Onshore LLC, Diamond South Operating, L.L.C., LSJ Exploration, L.L.C., and Oil & Ale LSJ, L.L.C.
[1] Larry Wagoner, Jean Wagoner, Russell G. Wagoner, Angela C. Wagoner, Roy Wagoner and Ivie Wagoner.
[2] Chevron U.S.A. Inc., Devon Energy Production Company L.P., McGowan Working Partners, Inc., Merit Energy Company, L.L.C., Merit Management Partners I, L.P., Merit Energy Partners III, L.P., Merit Energy Partners D-III, L.P., Smith Operating & Management Co., Spokane Oil & Gas, L.L.C., Sunset Oil & Gas, L.L.C., Denbury Onshore L.L.C., Diamond South Operating, L.L.C., LSJ Exploration, L.L.C. and Oil & Ale LSJ, L.L.C.
[3] Merit Energy Company, L.L.C., Merit Management Partners I, L.P., Merit Energy Partners III, L.P., Merit Energy Partners D-III, L.P.
[4] In subsections (a) through (d) of Part I of this opinion, "Defendants" refers to "Chevron, Merit and Devon."
[5] Smith Operating & Management Co., Spokane Oil & Gas, L.L.C., Sunset Oil & Gas, L.L.C., Denbury Onshore L.L.C., Diamond South Operating, L.L.C., LSJ Exploration, L.L.C. and Oil & Ale LSJ, L.L.C.